[No. A048489. First Dist., Div. Three. Feb. 8, 1991.]

CHEMICAL SPECIALTIES MANUFACTURERS ASSOCIATION, INC., et al., Petitioners, v.
GEORGE DEUKMEJIAN, as Governor, etc., et al., Respondents.

**COUNSEL**

Nielsen, Merksamer, Hodgson, Parrinello & Mueller, James R. Parrinello, Andrew M. Wolfe, Stephen S. Kellner, John E. DiFazio and Fred L. Main for Petitioners.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Richard M. Frank and Linda A. Cabatic, Deputy Attorneys General, for Respondents.

Jim Rogers as Amicus Curiae on behalf of Respondents.

**OPINION**

**MERRILL, J.**—The primary issue raised by this appeal is whether Proposition 105, an initiative measure, violates the single-subject rule contained in article II, section 8, subdivision (d) of the California Constitution. Having

determined that it does, we reverse the judgment denying the petition for writ of mandamus which sought to halt implementation of the measure.

## I

Proposition 105 on the November 9, 1988, general election ballot was adopted by the voters of this state. By its own provisions, the substantive portions of the initiative measure did not become operative until January 1, 1990.

The initiative is entitled the "PUBLIC'S RIGHT TO KNOW ACT." Paraphrasing the provisions, the measure is divided into the following parts: (1) A provision entitled "Household Toxic Products Disclosure" requiring that businesses advertising a household toxic product provide a warning that the product should not be placed in the trash or poured down the drain and that the Department of Health Services issue regulations defining what are household toxic products. (2) A provision entitled "Seniors Health Insurance Disclosure" requiring that public advertisements for insurance policies supplementing Medicare, i.e., "Medigap" insurance policies, disclose that the offerer of the policy is or is associated with a business which sells insurance if the name of the organization resembles a governmental agency, nonprofit or charitable institution or seniors organization, and that the policies contain a notice on the cover page that coverage may duplicate other Medicare supplemental insurance coverage, and that the coverage offered is "extensive," "moderate," or "limited." Further, that the notice disclose the ratio between premiums received and benefits paid ("loss ratio") for the preceding year and that individuals may call the Department of Insurance's toll-free number for information in respect to these policies. Further, that the Department of Insurance issue regulations setting minimum standards for which types of policies are "extensive," "moderate," or "limited." (3) A provision entitled "Seniors Nursing Home Disclosure" requiring that all long-term health care facilities admission contracts and advertisements contain a notice of the availability of additional information about the particular facility from the toll-free telephone number of the State Ombudsman's Office and that those facilities with the highest percentage (top 25 percent) of violations of law and regulations disclose the availability of the record of citations and that the Department of Health Services compile a list of the 25 percent of the facilities which have the most serious record of violations. (4) A provision entitled "Truth in Initiative Advertising" requiring that an advertisement favoring or opposing any statewide initiative or referendum contain a statement identifying the major funding source. (5) A provision entitled "Anti-Apartheid Disclosure" requiring that any corporation selling stock or securities in California disclose within its

prospectus whether it is doing business with South Africa or any person or group located there and that a copy of such notice be filed with the Secretary of State.

On August 10, 1989, appellants Chemical Specialties Manufacturers Association, Inc., the California Chamber of Commerce, and Harvey Harlowe Hukari filed an original mandamus petition with the Court of Appeal challenging Proposition 105 as violative of the single-subject rule but the court declined to exercise original jurisdiction. Consequently the petition was denied on September 28, 1989, and on November 16, 1989, the Supreme Court denied review. Thereafter, on December 14, 1989, appellants filed the instant petition for writ of mandamus, under Code of Civil Procedure section 1085, with the Superior Court of the City and County of San Francisco, challenging the constitutionality of the initiative. The trial court denied the petition.

## II

Article II, section 8, subdivision (d) of the California Constitution provides: "An initiative measure embracing more than one subject may not be submitted to the electors or have any effect." ■ In analyzing the constitutionality of a statute, we do not consider the economic or social wisdom or propriety of the initiative. Our sole function is to evaluate the initiative in light of established constitutional standards. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 219 [149 Cal.Rptr. 239, 583 P.2d 1281].) Statutes will be upheld unless their unconstitutionality appears clearly and unmistakably. (*Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 814-815 [258 Cal.Rptr. 161, 771 P.2d 1247].) ■ Traditionally, our courts liberally construe the initiative power and "*resolve any reasonable doubts in favor of the exercise of this precious right.*" (*Brosnahan* v. *Brown* (1982) 32 Cal.3d 236, 241 [186 Cal.Rptr. 30, 651 P.2d 274], italics in original.) Of equal importance, however, is the fact that in adopting a constitutional amendment limiting initiative measures to one subject, it was the will of the people that the process not be abused.

■ Our Supreme Court has stated that an initiative measure complies with the single-subject rule "if its provisions are either functionally related to one another or are reasonably germane to one another or the objects of the enactment." (*Harbor* v. *Deukmejian* (1987) 43 Cal.3d 1078, 1100 [240 Cal.Rptr. 569, 742 P.2d 1290]; see also *Brosnahan* v. *Brown, supra*, 32 Cal.3d at pp. 245, 247.) Whether an initiative satisfies this standard may be determined by the extent to which its provisions are germane to the general subject as reflected in the title and the field of legislation suggested thereby.

(*California Trial Lawyers Assn.* v. *Eu* (1988) 200 Cal.App.3d 351, 358 [245 Cal.Rptr. 916] [hereafter *CTLA*], citing *Perry* v. *Jordan* (1949) 34 Cal.2d 87, 93 [207 P.2d 47], and *Fair Political Practices Com.* v. *Superior Court* (1979) 25 Cal.3d 33, 38 [157 Cal.Rptr. 855, 599 P.2d 46]; see also *Brosnahan* v. *Brown, supra,* 32 Cal.3d at pp. 246-247.)

In *Brosnahan,* the court analyzed that the changes in the criminal justice system proposed by Proposition 8 were for the purpose of protecting the rights of victims of crime. The court concluded Proposition 8 did not violate the rule as the several facets of the initiative bore a "common concern, 'general object' or 'general subject,' promoting the rights of actual or potential crime victims." The court went on to state that the proposition "constitutes a reform aimed at certain features of the criminal justice system to protect and enhance the rights of crime victims." (*Brosnahan* v. *Brown, supra,* 32 Cal.3d at p. 247.) In its most recent pronouncement on this issue our Supreme Court in *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336 [276 Cal.Rptr. 326, 801 P.2d 1077] determined that Proposition 115, adopted by the voters of this state at the June 5, 1990, primary election, did not violate the single-subject rule. The measure adopts a number of changes and additions to the state Constitution and statutes, and after finding *Brosnahan* controlling, the court stated that "[a]s in *Brosnahan,* the measure was 'designed to strengthen procedural and substantive safeguards for victims in our criminal justice system.' [Citation.] . . . [T]he single subject of Proposition 115 is promotion of the rights of actual and potential crime victims." (*Raven* v. *Deukmejian, supra,* 52 Cal.3d at p. 347.) The rights of crime victims supplies the common purpose or object for the measure and provides the nexus which links the various provisions to one another. The need for establishing such a limitation was expanded upon by the *Brosnahan* court in its admonition that initiative proponents do not have "blank checks to draft measures containing unduly diverse or extensive provisions bearing no reasonable relationship to each other or to the general object which is sought to be promoted. The single-subject rule indeed is a constitutional safeguard adopted to protect against multifaceted measures of undue scope. . . . [T]he rule obviously forbids joining disparate provisions which appear germane only to topics of excessive generality such as 'government' or 'public welfare.'" (*Brosnahan* v. *Brown, supra,* 32 Cal.3d at p. 253; accord, *Harbor* v. *Deukmejian, supra,* 43 Cal.3d at p. 1099.)

The Supreme Court in *Harbor* found a legislative bill to be violative of the single-subject requirement for legislative enactments as the provisions were neither functionally related to one another nor reasonably germane to one

another or to the objects of the enactment.[1] The bill, described in its title as "'relating to fiscal affairs'" contained 150 sections, affecting over 20 codes and legislative acts. The measure was characterized as a "'trailer bill'" to the Budget Act of 1984. (*Harbor* v. *Deukmejian, supra,* 43 Cal.3d at pp. 1097, 1100.)

In analyzing the bill, the *Harbor* court relied on the cases interpreting the single-subject rule for initiatives, placing particular emphasis upon the *Brosnahan* court's statements that a subject of "excessive generality" violates the purpose behind the constitutional rule. *Harbor* concluded that no apparent relationship existed among the bill's provisions. Further, the court found that the subject of "fiscal affairs" was simply too broad in scope to constitute a single topic for purposes of the single-subject rule. (*Harbor* v. *Deukmejian, supra,* 43 Cal.3d at pp. 1098-1100.) "The number and scope of topics germane to 'fiscal affairs' in this sense is virtually unlimited. If petitioners' position were accepted, a substantial portion of the many thousand statutes adopted during each legislative session could be included in a single measure even though their provisions had no relationship to one another or to any single object except that they would have some effect on the state's expenditures as reflected in the budget bill. This would effectively read the single-subject rule out of the Constitution." (*Id.,* at pp. 1100-1101.)

In *CTLA*, the Court of Appeal considered a single-subject rule challenge to a "no-fault" automobile insurance initiative. The purpose of the initiative as stated in the title and body was to control the increasing cost of insurance premiums to California purchasers of liability insurance. The initiative proposed to establish a variety of means to accomplish this purpose, including a "no-fault" automobile insurance system, limits on attorneys' contingency fees, required arbitration of claims and a two-year roll back of premiums. In addition, the initiative contained a section regulating campaign contributions to elected state officials and setting forth conflict of interest standards for officials who received such contributions. It was this last provision which was the subject of the single-subject challenge.

The *CTLA* court reasoned that the campaign contribution section had no logical connection to the initiative's stated purpose. It was asserted by the initiative proponents that the campaign contribution section pertained generally to regulation of insurance industry practices and specifically to the right of individuals and entities in the insurance industry to participate on an "equal" basis in the political process. The court rejected the argument that the Supreme Court's tradition of liberally construing initiative

---

[1] Article IV, section 9 of the California Constitution provides that a "statute shall embrace but one subject, which shall be expressed in its title."

measures allowed for the initiative to be considered as reasonably germane to its purpose. The court noted that the initiative's express purpose was insurance cost control and not regulation of insurance industry practices generally. Moreover, the court criticized the implication that any two initiative provisions, no matter how functionally unrelated, satisfy the single-subject rule, so long as they have some effect on the topic contained in the initiative. This approach "would permit the joining of enactments so disparate as to render the constitutional single-subject limitation nugatory." (*CTLA, supra,* 200 Cal.App.3d at pp. 359-360.)

### III

We have determined that in the instant case the provisions of Proposition 105 are neither functionally related to one another nor reasonably germane to one another or the objects of the enactment.

It appears the respondents realized early on that with the initiative entitled the "PUBLIC'S RIGHT TO KNOW ACT," they could not prevail by taking the position that the "provisions were germane to the general subject reflected in the title." The parties seem to agree that disclosure without some limitation and the public's right to know are topics of excessive generality. Therefore, in the court below, respondents argued that "the sole objective of the measure is public disclosure, i.e., truth-in-advertising. Proposition 105's overriding concern applies regardless of whether that compelled disclosure be by way of paid advertisements or advertisements relating to the product and found on the label or contract for the product."

In support of their contention that all provisions of the measure came within a single subject, "public disclosure, i.e., truth-in-advertising," respondents rely upon the definition of the word "advertising" as found in Black's Law Dictionary. It defines the word "advertise" to mean "[t]o advise, announce, apprise, command, give notice of, inform, make known, publish. [Or] call to the public attention by any means whatsoever. Any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business and includes, without limitation because of enumeration, statements and representations made in a newspaper or other publication or on radio or television or contained in any notice, handbill, sign, catalog, or letter, or printed on or contained in any tag or label attached to or accompanying any merchandise." (Black's Law Dictionary (1979 5th ed.) p. 50.)

It is apparent, however, that rather than aiding respondents, this definition gives support to the position of appellants that "public disclosure,

i.e., truth-in-advertising" is a subject of excessive generality. By this definition "[t]he number and scope of topics germane to ["advertising"] in this sense is virtually unlimited." (*Harbor* v. *Deukmejian, supra,* 43 Cal.3d at pp. 1100-1101.)

If we crisscross the provisions of the measure it is readily apparent that there is no reasonable relationship to one another which would support a finding that they embrace a single subject.

The Household Toxic Products section directs that notice be given that the product should not be placed in the trash or poured down the drain whereas the Seniors Health Insurance section and the Seniors Nursing Home section mandate specific contract provisions. At the same time, the Seniors Health Insurance section is designed primarily to prevent seniors from being misled or deceived in acquiring insurance, whereas the thrust of the Seniors Nursing Home section is to provide seniors with a health and safety warning if they are contemplating becoming patients in a particular nursing home. Furthermore, neither of these provisions has any relationship to disposing of toxic products, or to conditions imposed upon corporations for the sale of stock as provided in the Anti-Apartheid section. Moreover, the Truth in Initiative Advertising section is clearly different from all the rest as no products or services are being offered to anyone.

Additionally, an initiative which requires unrelated state agencies to determine which household products are toxic, to establish a rating system for insurance policies, and to ascertain which health care facilities have the most serious operating violations, cannot be said to embrace but one subject. (See *Harbor* v. *Deukmejian, supra,* 43 Cal.3d at p. 1100.)

The initiative's preamble states that the "lack of truth in advertising strongly reduces the public's right to accurate information, resulting in harm to their health and finances." However, the object of providing the public with accurate information in advertising is so broad that a virtually unlimited array of provisions could be considered germane thereto and joined in this proposition, essentially obliterating the constitutional requirement.

In actuality, the measure seeks to reduce toxic pollution, protect seniors from fraud and deceit in the issuance of insurance policies, raise the health and safety standards in nursing homes, preserve the integrity of the election process, and fight apartheid; well-intentioned objectives but not reasonably related to one another for purposes of the single-subject rule.

The unconstitutionality of Proposition 105 is also supported by a brief review of the history of the measure. Initially, the five parts to the initiative were introduced separately and rejected in our state Legislature. After the individual bills were defeated they were gathered together as one ballot initiative. While this "logrolling" alone does not convince us of the invalidity of the initiative, it is but additional support that the initiative does not satisfy the purposes behind the single-subject requirement.

IV

■ Respondents make the further contention that appellants' petition is barred by laches as appellants waited an unreasonable length of time before challenging the constitutionality of Proposition 105. Respondents submit they were prejudiced by this delay as the various governmental departments responsible for implementation of the measure commenced formulation of regulations. We have determined that respondents did not meet their burden of demonstrating unreasonable delay or prejudice.

Laches requires unreasonable delay plus either acquiescence in the act about which the complainant complains or prejudice to the party asserting the equitable defense resulting from the delay. (*Conti* v. *Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 359 [82 Cal.Rptr. 337, 461 P.2d 617].) Our courts have consistently ruled that generally " '[d]elay is not a bar unless it works to the *disadvantage or prejudice* of other parties.' [Citations.]" (*Brown* v. *State Personnel Bd.* (1985) 166 Cal.App.3d 1151, 1159 [213 Cal.Rptr. 53].)

In denying the petition, the trial court did not specify whether its ruling was based on respondents' assertion of the laches defense or appellants' failure to establish a violation of the single-subject rule. For purposes of review, we must assume the petition may have been denied because of laches and we therefore address the propriety of such a ruling.

In the instant case, the record reveals respondents failed to meet their burden of establishing laches and a denial of the petition on this basis is unsupported in the record. Although the measure was adopted by the electorate at the November 1988 election, the substantive provisions therein were not to become effective until January 1990. Appellants filed their original mandamus petition with the Court of Appeal nearly five months before the effective date of the measure. On December 14, 1989, one month after the Supreme Court's denial of review of the Court of Appeal's order, the petition at issue here was filed with the Superior Court of the City and County of San Francisco. The laches defense was not asserted until the

superior court proceeding in which respondents contended a challenge to the initiative should have been filed by appellants immediately after the November 1988 passage of the measure. The unreasonable length of time claimed by respondents is that nine-month period of time from November 1988 to August 1989. Respondents submitted to the trial court that the Secretary of State had already conducted preregulation public hearings and had adopted a schedule for completion of the regulations; that the Department of Health Services had made recommendations and established guidelines for the promulgation of regulations; and that the Insurance Commissioner was engaged in adopting emergency regulations. It is contended that undertaking these preimplementation procedures resulted in prejudice to the respondents.

In the first instance, at the time that this proceeding was before the lower court, the various departments or officials responsible for adoption of regulations had taken only preliminary steps toward that goal. Most importantly, however, the constitutional provision which has been violated in this case precludes an initiative measure with more than a single subject from "hav[ing] any effect." The overriding public interest in compliance with this mandate outweighs any minimal prejudice suffered by respondents. Under the circumstances presented in this case, the public's interest in adherence to the single-subject requirement should not be subordinated to its interest in economical government. (See *Santiago County Water Dist.* v. *County of Orange* (1981) 118 Cal.App.3d 818, 834 [173 Cal.Rptr. 602], citing *People ex rel. Dept. Pub. Wks.* v. *Bosio* (1975) 47 Cal.App.3d 495, 525-526 [121 Cal.Rptr. 375].) A denial of the petition on a basis of the laches defense, if such be the case, is erroneous.

V

The order denying the petition for writ of mandamus is reversed, and the matter is remanded to the trial court with directions to grant the petition. Appellants are awarded costs on appeal.

White, P. J., and Strankman, J., concurred.

Respondents' petition for review by the Supreme Court was denied April 25, 1991.