[No. A058211. First Dist., Div. One. Apr. 9, 1993.]

STATE COMPENSATION INSURANCE FUND, Plaintiff and Appellant,
v.
STATE BOARD OF EQUALIZATION et al., Defendants and
Respondents.

## Counsel

Krimen & Bjornsen and George S. Bjornsen for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, and Julian O. Standen, Deputy Attorney General, for Defendants and Respondents.

## Opinion

**NEWSOM, J.**—This appeal from a judgment dismissing an action for a tax refund challenges the validity of a provision of Proposition 103, approved by the electorate in 1989, which raised the rate of the insurance premium tax imposed by California Constitution article XIII, section 28. The State Compensation Insurance Fund (hereafter State Fund) is an "insurer" as defined by subdivision (a) of article XIII, section 28. In an earlier mandamus proceeding brought by another insurer, the Supreme Court declined to consider the issue raised in this appeal on the ground that California Constitution article XIII, section 32 bars "prepayment review of tax measures . . . ." (*Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 838 [258 Cal.Rptr. 161, 771 P.2d 1247].)

After paying the tax at issue for the year 1989, State Fund filed a complaint for a refund against the State Board of Equalization in the Superior Court of San Francisco. As the facts were undisputed, both parties subsequently moved for summary judgment. In a judgment entered June 4, 1992, the trial court granted the motion of the State Board of Equalization and dismissed State Fund's action. This appeal followed.

The objective of Proposition 103 was to roll back rates for many kinds of insurance by 20 percent from the levels in effect on November 8, 1987. Such a general reduction of premiums could result in the loss of revenues from the taxation of insurance premiums. Under California Constitution article XIII, section 28, insurers are subject to an annual tax based on a percentage of gross premiums, less return premiums. To prevent this possibility, Proposition 103 gave the State Board of Equalization power to raise the rate of the insurance premiums tax for a period of about two years. The pertinent provision, codified as Revenue and Taxation Code section 12202.1 provides in part: "the gross premiums tax rate paid by insurers for any premiums collected between November 8, 1988 and January 1, 1991 shall be adjusted by the Board of Equalization in January of each year so that the gross premium tax revenues collected for each prior calendar year shall be sufficient to compensate for changes in such revenues, if any, . . . arising from this act."

In exercising this power, the State Board of Equalization raised the gross premiums tax rate for 1989 from 2.35 to 2.37 percent. State Fund claims that the rate increase was invalid because California Constitution article XIII, section 28, gives the Legislature exclusive power to adjust the gross premiums tax.

As enacted in 1910, the predecessor to California Constitution article XIII, section 28, imposed a fixed rate of tax on gross premiums but provided that the rate could be changed by a two-thirds vote of both houses of the Legislature. The rate was later put at 2.35 percent in one of several amendments to the provision. In 1976 the electorate approved a ballot measure, entitled Proposition 5, eliminating the requirement of two-thirds legislative vote for approval of tax rate changes. Proposition 5 accomplished this result by simply substituting the words "a majority" for the words "two-thirds" in the constitutional provision. The pertinent portions of article XIII, section 28, now provide: "(b) An annual tax is hereby imposed on each insurer doing business in this state . . . at the rates . . . hereinafter specified. . . . [¶] (d) The rate of the tax to be applied to the basis of the annual tax in respect to each year is 2.35 percent. . . . [¶] (h) The taxes provided for by this section shall be assessed by the State Board of Equalization. [¶] (i) The Legislature, a majority of all the members elected to each of the two houses voting in favor thereof, may by law change the rate or rates of taxes herein imposed upon insurers."

State Fund contends that California Constitution article XIII, section 28, gives a distinct constitutional mandate to the Legislature and the State Board of Equalization; the Legislature is authorized to change the tax rate and the

State Board of Equalization is directed to assess the tax at the rate the Legislature decides upon. State Fund argues that Revenue and Taxation Code section 12202.1 "completely revamps the taxation scheme provided by Section 28 by eliminating the Legislature from the scheme of things and delegating to the State Board the task of determining the extent of any necessary change in the premium tax rate . . . ." Consequently, the statute violates the principle that "[p]owers, obligations, and rights bestowed or declared by the Constitution may not be amended, modified, or derogated by statute, whether that statute is adopted by the Legislature or the initiative method." (*Fair Political Practices Com.* v. *State Personnel Bd.* (1978) 77 Cal.App.3d 52, 56 [143 Cal.Rptr. 393], overruled on other grounds in *Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168 [172 Cal.Rptr. 487, 624 P.2d 1215]; *State Board of Education* v. *Levit* (1959) 52 Cal.2d 441, 463 [343 P.2d 8]; *Wallace* v. *Zinman* (1927) 200 Cal. 585 [254 P. 946, 62 A.L.R. 1341].)

We observe, however, that Revenue and Taxation Code section 12202.1 clearly meets the standards for a proper delegation of legislative power. ■ "[T]he Legislature need not prescribe the exact method by which the tax is to be fixed, but 'may delegate to its taxing officers the power to adopt a suitable method.' [Citation.] The essential requirement is the Legislature's specification of a standard—'an intelligible principle to which the person or body authorized to [administer the act] is directed to conform' [citation]— but it may leave to the administrative agency the precise determination necessary to bring the standard into operation." (*El Dorado Oil Works* v. *McColgan* (1950) 34 Cal.2d 731, 738 [215 P.2d 4]; *Times Mirror Co.* v. *City of Los Angeles* (1987) 192 Cal.App.3d 170, 188 [237 Cal.Rptr. 346].) ■ Revenue and Taxation Code section 12202.1 contains such an intelligible standard, capable of administrative application. The first sentence states an objective standard, i.e., the tax "shall be sufficient to compensate for changes in such revenues, if any, including changes in anticipated revenues, arising from this act." And the second sentence offers certain guidelines on how it is to be applied: "In calculating the necessary adjustment, the Board of Equalization shall consider the growth in premiums in the most recent three year period, and the impact of general economic factors including, but not limited to, the inflation and interest rates."

■ Since Revenue and Taxation Code section 12202.1 represents a proper delegation of legislative power to an administrative agency, it remains only to inquire whether the legislative power to change the insurance premiums tax rate can be exercised through an initiative. We conclude that the constitutional grant of power to the Legislature in article XIII, section 28, subdivision (i), entails a similar grant of power to the electorate to legislate through the initiative process.

■ "[T]he reserved power to enact statutes by initiative is a legislative power, one that would otherwise reside in the Legislature." (*Legislature* v. *Deukmejian* (1983) 34 Cal.3d 658, 673 [194 Cal.Rptr. 781, 669 P.2d 17].) California Constitution, article IV, section 1, provides: "The legislative power of this State is vested in the California Legislature which consists of the Senate and Assembly, but the people reserve to themselves the powers of initiative and referendum." Apart from procedural differences, the electorate's lawmaking powers are identical to the Legislature's. (*Kennedy Wholesale, Inc.* v. *State Bd. of Equalization* (1991) 53 Cal.3d 245, 251 [279 Cal.Rptr. 325, 806 P.2d 1360]; *People's Advocate, Inc.* v. *Superior Court* (1986) 181 Cal.App.3d 316, 325 [226 Cal.Rptr. 640].) Thus, while commenting on a change in the rules of evidence through an initiative measure, the Supreme Court speaks of the initiative power as being entailed in the established prerogatives of the Legislature: "The Legislature and, a fortiori, the people acting through either the reserved power of statutory initiative or the power to initiate and adopt constitutional amendments (art. II, § 8) may prescribe rules of procedure and of evidence to be followed in the courts of this state." (*In re Lance W.* (1985) 37 Cal.3d 873, 891 [210 Cal.Rptr. 631, 694 P.2d 744].)

The language "the Legislature may" is found throughout article XIII[1] and in many other places in the California Constitution.[2] It would be absurd to attribute to the framers of the Constitution an intention to limit the initiative power in the many and varied contexts in which the phrase appears. Though the matter can never have been seriously in doubt, it has been held specifically that the initiative power extends to tax legislation. (*Carlson* v. *Cory* (1983) 139 Cal.App.3d 724, 728-729 [189 Cal.Rptr. 185]; see also *Kennedy Wholesale, Inc.* v. *State Bd. of Equalization, supra,* 53 Cal.3d 245.) ■ We see no significance in the language of subdivision (i) of article XIII, section 28, permitting a change in the tax rate with "a majority of all the members elected to each of the two houses voting in favor thereof . . . ." The legislative history reveals that the language is merely a relict of the original provision which required a two-thirds vote of the Legislature. The substitution of the words "a majority" for "two-thirds" represented a simple means of amending the provision which made the nature of the amendment readily apparent.

State Fund's interpretation of article XIII, section 28, would have the effect of implicitly limiting the "expressly reserved power of initiative."

---

[1] See article XIII, sections 2, 4, 7, 8, 8.5, 9, 15, 19, 20, 24, 27, and 29.

[2] See article I, sections 15 and 16; article III, sections 4 and 6; article IV, sections 4, 12, 19, and 20; article VI, sections 11 and 22; article VII, sections 6 and 11; article IX, section 14; article X, section 2; article XI, sections 1, 8, 11, and 12; article XII, section 3; article XIII A, section 2; article XIV, sections 1 and 4; article XVI, sections 1, 1.5, 2, 14, 14.5, 16, and 17; article XIX, sections 4 and 5; article XX, sections 1 and 22.

(*Kennedy Wholesale, Inc.* v. *State Bd. of Equalization, supra*, 53 Cal.3d 245, 249, fn. deleted.) To the extent that it would qualify by implication an expressly granted power, it falls afoul of the principle that " 'the law shuns repeals by implication. . . .' " (*Ibid.*) ▆▆▆ Furthermore, the interpretation would run counter to the frequently expressed policy favoring the exercise of the initiative power. In *Fair Political Practices Com.* v. *Superior Court* (1979) 25 Cal.3d 33, 41 [157 Cal.Rptr. 855, 599 P.2d 46], the Supreme Court drew upon several past decisions to restate the policy in the following terms: " 'Declaring it "the duty of the courts to jealously guard this right of the people" [citation], the courts have described the initiative and referendum as articulating "one of the most precious rights of our democratic process" [citation]. "[I]t has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled. If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it." [Citations.]' " (See also *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 341 [276 Cal.Rptr. 326, 801 P.2d 1077]; *Brosnahan* v. *Brown* (1982) 32 Cal.3d 236, 241 [186 Cal.Rptr. 30, 651 P.2d 274]; *Perry* v. *Jordan* (1949) 34 Cal.2d 87, 90-91 [207 P.2d 47]; *Chemical Specialties Manufacturers Assn., Inc.* v. *Deukmejian* (1991) 227 Cal.App.3d 663, 667 [278 Cal.Rptr. 128].)

In *Kennedy Wholesale, Inc.* v. *State Bd. of Equalization, supra*, 53 Cal.3d 245, our high court applied these principles to uphold a much stronger challenge to a tax increase adopted through an initiative, Proposition 99. The tax increased the tax on cigarettes and other tobacco products. The plaintiff, a distributor of tobacco products, claimed that it conflicted with California Constitution article XIII A, section 3, a provision added by Proposition 13, the Jarvis-Gann initiative. Article XIII A, section 3, provides that " 'any changes in State taxes enacted for the purpose of increasing revenues . . . must be imposed by an Act passed by not less than two-thirds of all members elected to each of the two houses of the Legislature . . . .' " (53 Cal.3d at p. 248.) The court found that "[s]ection 3's silence regarding its effect on the reserved power of initiative presents a latent ambiguity," and proceeded to analyze the presumptions, discussed above, favoring the validity of the initiative measure. (*Id.* at p. 249.) Looking to the legislative history of the measure, it concluded that the plaintiff "has not demonstrated that the voters who adopted Proposition 13 intended to limit the reserved power of initiative. Because section 3 can reasonably be interpreted not to limit that power, and because 'we are required to resolve any reasonable doubts in favor of the exercise of this previous right' [citation], we hold that Proposition 99 does not violate section 3." (*Id.* at p. 253, italics deleted.)

▆▆▆ ▆▆▆ In summary we conclude that the electorate possessed the power to change the tax rate in California Constitution article XIII, section

28, by initiative and, through the provision now codified in Revenue and Taxation Code section 12202.1, Proposition 103 properly delegated that power to the State Board of Equalization.

The judgment is affirmed.

Strankman, P. J., and Dossee, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 10, 1993.