Filed 9/13/23  Whitehurst v. City of Los Angeles CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| DAVID WHITEHURST, Plaintiff and Appellant, v. CITY OF LOS ANGELES, et al., Defendants and Respondents. | B321755 (Los Angeles County Super. Ct. No. 19STCP04420) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge.  Affirmed.

David Whitehurst, in pro. per., for Plaintiff and Appellant.

Hydee Feldstein Soto, City Attorney, Vivienne A. Swanigan, Assistant City Attorney, and Erika Johnson-Brooks, Deputy City Attorney, for Defendants and Respondents.

# INTRODUCTION

The Los Angeles Housing and Community Investment Department discharged David Whitehurst for using his position as an inspector to cancel inspections and avoid paying fees on properties he owned. The Board of Civil Service Commissioners of the City of Los Angeles upheld Whitehurst's discharge, and the trial court denied his petition for writ of administrative mandate. Whitehurst appeals, arguing that the Department violated his due process rights by disciplining him for conduct he committed eight years earlier, that substantial evidence did not support the findings against him, that a prior settlement agreement barred the Department from disciplining him, and that the Board abused its discretion in upholding his discharge. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *The Department and Whitehurst Settle Previous Disciplinary Charges*

Whitehurst began working for the Department as a housing inspector in the Code Enforcement Division in 1999. Whitehurst was promoted to senior housing inspector in 2002 and principal inspector in 2012. In 2016 Whitehurst was principal inspector for the central regional office. He supervised a group of inspectors who inspected multifamily rental properties and enforced code provisions and zoning laws governing the construction, rehabilitation, repair, alteration, and use of residential and commercial structures.

In June 2016 the Department disciplined Whitehurst for violating Department rules and failing to carry out his

2

supervisory duties adequately after Whitehurst knowingly approved a subordinate employee's falsified timesheet. The Department proposed suspending Whitehurst for 11 days, but agreed to reduce the suspension to five days. The Department and Whitehurst documented the arrangement in a settlement agreement and mutual release.

B.    *The Department Discovers and Investigates Additional Misconduct by Whitehurst*

On September 6, 2016 the Department scheduled an inspection for a rental property on West 77th Street in Los Angeles and mailed an inspection notice to the property owner, Faith Christian Center. On September 19, 2016 Whitehurst closed the case in the Department's information management system, which canceled the inspection. He added a note in the system stating he had closed the case because the units were "HACLA [Housing Authority of the City of Los Angeles] Section 8 leased" and sent the note to an administrative clerk in the south regional office, which had jurisdiction over the 77th Street property.[1] When the clerk received Whitehurst's note, she told principal inspector Jim Heiberg, who managed the south regional office, Whitehurst had closed the case. Heiberg reopened the case because it was the Department's policy to

---

[1]    Section 8 is a federal program that provides financial assistance to low-income tenants. The program is administered by local public housing authorities such as the Housing Authority of the City of Los Angeles. (*Morrison v. Housing Authority of the City of Los Angeles Bd. of Comrs.* (2003) 107 Cal.App.4th 860, 864, fn.1.)

3

inspect Section 8 properties unless they were government-owned, which the 77th Street property was not.

A few weeks later Whitehurst went to the south regional office and asked Heiberg why he reopened the case after Whitehurst had closed it. Heiberg told Whitehurst the Department inspected privately owned Section 8 properties and asked Whitehurst what his concern was. Whitehurst told Heiberg he owned the property and asked for an extension on the inspection because he was going on vacation.[2] Heiberg agreed to give Whitehurst a 30-day extension, until November 21, 2016. Heiberg asked Ken Lam, Heiberg's supervisor and the chief inspector of the south regional office, to attend the inspection because, when an employee owned a property, the Department required an employee with a higher classification than the employee-owner to be present.

Around the same time Whitehurst spoke with Heiberg, Whitehurst also asked his supervisor, chief inspector Robert Galardi, about the Department's policy for inspecting Section 8 properties, although Whitehurst did not mention the 77th Street property. On November 17, 2016 Whitehurst again asked Galardi about the Department's policy, said the Department had scheduled an inspection for a Section 8 property Whitehurst owned, and asked to postpone the inspection. Galardi asked

---

[2] The Department's records listed Faith Christian Center Inc. as the owner of the 77th Street property. At the administrative hearing Whitehurst argued that he was not the owner of the property, but admitted that he owned all the shares of Faith Christian Center. The hearing examiner found Whitehurst had a substantial interest in the property as "owner, president, director," or in "some other official role." Whitehurst does not challenge this finding.

4

Whitehurst to put his request in writing. Whitehurst wrote a letter to Galardi asking him to postpone the inspection until early February 2017. Whitehurst stated that he was the "president of Faith Christian Center" and that he "took over title" to the property from his mother in 2011. Galardi contacted Heiberg, who told Galardi that he had already granted Whitehurst an extension.

On November 21, 2016 housing inspector Greg Leduff arrived at the 77th Street property to conduct the inspection. Whitehurst told Leduff he was president of Faith Christian Center, which owned the property. LeDuff inspected the exterior of the property and noted several code violations. When chief inspector Lam and senior inspector Marcel Nicholas arrived, Whitehurst refused to allow them to inspect the interior of the building and stated the units were Section 8 and inspected by HACLA. Lam explained the Department's policy on inspecting Section 8 properties, but Whitehurst refused to allow them to enter. Whitehurst also refused to allow the inspectors to contact the property's tenants. He said the inspectors were "not welcome on the property" and told them not to come back.

The Department issued a notice to comply that listed the exterior violations Leduff found. The Department also issued a notice and order to provide entry. On January 26, 2017 Leduff returned to the 77th Street property with chief inspector Germain Mendoza to conduct the reinspection. Leduff inspected the four interior units and recorded code violations. The Department issued another notice to comply and scheduled a reinspection for March 15, 2017.

Meanwhile, the Department reviewed its records for the 77th Street property and discovered it had never been inspected.

The Department discovered that, while Whitehurst managed the south regional office, he had closed inspection cases and canceled inspections for the property in 2009 and 2013. The Department also discovered that Whitehurst owned a second property, on 109th Street, under the jurisdiction of the south regional office and that he had closed an inspection case for that property in 2014, citing Section 8 tenancy as the reason. Whitehurst admitted he closed cases for the two properties, but said he did so because he believed the Department did not inspect Section 8 properties. Whitehurst said he thought his actions were appropriate and did "not see it as a conflict of interest."

During its investigation the Department also discovered it was not assessing Rent Stabilization Ordinance (RSO) fees on the 77th Street property, even though the Department determined during a 2009 audit the property was subject to the RSO, which applies to properties built before 1978. On further investigation, the Department learned that in 2009 Whitehurst changed the "built date" in the Department's billing system from 1955 (when the building on the property was constructed) to 1997 (when the building was converted to four units). The Department concluded Whitehurst entered false information about the date the property was built and the building's history, which caused the Department not to bill the property for RSO fees for nearly 10 years.

> C. *The Department Discharges Whitehurst, the Hearing Examiner Conducts an Evidentiary Hearing, and the Board Upholds Whitehurst's Discharge*

In April 2017 the Department served Whitehurst with a notice of hearing under *Skelly v. State Personnel Bd.* (1975)

15 Cal.3d 194, 215 (*Skelly*) informing Whitehurst the Department intended to discharge him.[3] The notice listed six charges: (1) "Using official position or office for personal gain or advantage"; (2) "Engaging in any activity which constitutes a conflict of interest"; (3) "Engaging in unethical, inappropriate, and/or illegal behavior in conflict with job duties, on or off the job"; (4) "Falsifying City Records such as time reports, mileage reports, expense accounts or other work related documents"; (5) "A violation of Departmental rules"; and (6) "Misusing delegated authority in the performance of duties." The Department scheduled the hearing, and Whitehurst submitted a written response. After the hearing the Department discharged Whitehurst.

Whitehurst appealed to the Board. The Board appointed a hearing examiner, who conducted a 21-day evidentiary hearing between September 2017 and December 2018. The examiner issued a 129-page report recommending that the Board find the Department had complied with the requirements of *Skelly*, that the Board sustain all six charges, and that the discharge was appropriate. In July 2019, after considering the hearing examiner's report, the Board (1) found the Department met its obligations under *Skelly*, (2) sustained charges 1 through 4 and 6, (3) did not sustain charge 5 (violation of Department rules), and (4) sustained the penalty of discharge.

---

[3]     In *Skelly*, *supra*, 15 Cal.3d 194 the Supreme Court held a permanent civil service employee has due process rights to certain preremoval safeguards, including "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Id.* at p. 215.)

D.    *Whitehurst Files a Petition for Writ of Administrative Mandate, Which the Trial Court Denies*

In October 2019 Whitehurst filed a petition for writ of mandate in the superior court challenging the Board's decision. The court denied the petition. Applying the independent judgment standard of review, the court rejected Whitehurst's contentions that the Department violated his due process rights under *Skelly*, that the Board abused its discretion in admitting certain evidence and excluding other evidence at the hearing, and that the 2016 settlement agreement precluded the Department from disciplining Whitehurst. The court also found it did not need to determine whether the City acted appropriately in inspecting the 77th Street property, an issue Whitehurst raised in his reply brief but not in his operative second amended petition. Whitehurst timely appealed from the judgment denying the petition.

## DISCUSSION

A.    *Applicable Law and Standard of Review*

A trial court ruling on a petition for writ of administrative mandate must decide whether an agency "proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5, subd. (b).) "Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (*Ibid*.)

"When a fundamental vested right is involved, such as the right of a city employee to continued employment [citation], the

8

trial court exercises its independent judgment to determine whether due process requirements were met and whether the agency's findings are supported by the weight of the evidence." (*Flippin v. Los Angeles City Bd. of Civil Service Comrs.* (2007) 148 Cal.App.4th 272, 279; see *Lozano v. City of Los Angeles* (2022) 73 Cal.App.5th 711, 723; *Cassidy v. California Bd. of Accountancy* (2013) 220 Cal.App.4th 620, 626.)  "[W]hen a court reviews an administrative determination [affecting a vested fundamental right], the court must 'exercise its independent judgment on the facts, as well as on the law . . . .'"  (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 811; see *Bautista v. County of Los Angeles* (2010) 190 Cal.App.4th 869, 875.)  We review the trial court's factual findings, not the agency's findings, for substantial evidence and the court's legal determinations de novo.  (*Lozano*, at p. 723; *Melkonians v. Los Angeles County Civil Service Com.* (2009) 174 Cal.App.4th 1159, 1168.)

> B. *Substantial Evidence Supported the Trial Court's Finding the Department Did Not Violate Whitehurst's Due Process Rights*

Whitehurst argues the Department violated his due process rights by "denying [him] a speedy resolution" of the charge he falsified a record by changing the "built date" of the 77th Street property.  Whitehurst contends that he changed the date on February 26, 2009, that by November 6, 2009 the Department knew he had changed the date, but that the Department waited until 2017 to discipline him.  Whitehurst asserts the Department knew by November 6, 2009 he had falsified the record because on that date it sent a letter to Faith Christian Center stating the

9

Department had determined the 77th Street property was subject to the RSO.

Ample evidence supported the trial court's finding the delay did not violate Whitehurst's due process rights. As an initial matter, Whitehurst has not demonstrated the Department knew before 2017 he falsified the record. Whitehurst points out that in November 2009 the Department sent a letter stating the 77th Street property was subject to the RSO. But there was no evidence the Department knew before 2017, when it (a) discovered Whitehurst owned the property and (b) began looking at the records, that Whitehurst had changed the "built date" from 1955 to 1997.

But even assuming the Department knew in 2009 Whitehurst had falsified a record and waited until 2017 to discipline him, substantial evidence supported the trial court's finding Whitehurst did not articulate or demonstrate "any prejudice allegedly suffered from any delay." (See *Fisher v. State Personnel Bd.* (2018) 25 Cal.App.5th 1, 20 [party claiming error based on a violation of *Skelly* rights must demonstrate "prejudice arising from the reasonable probability the party 'would have obtained a better outcome' in the absence of the error"]; *Chemical Specialties Manufacturers Assn., Inc. v. Deukmejian* (1991) 227 Cal.App.3d 663, 672 ["courts have consistently ruled that generally "'[d]elay is not a bar unless it works to the *disadvantage or prejudice* of other parties"'"]; *Brown v. State Personnel Bd.* (1985) 166 Cal.App.3d 1151, 1159 ["'[d]elay is not a bar unless it works to the disadvantage or prejudice of other parties'"]; see also *Li v. Superior Court* (2021) 69 Cal.App.5th 836, 865 ["no remedy is available to petitioner for failing to demonstrate, in his petition, that he would have received a

10

different outcome had the trial court" applied the correct standard of proof under Code of Civil Procedure section 1094.5].)

Whitehurst argues the delay prejudiced him because, had the Department disciplined him earlier, different supervisors would have investigated him and those supervisors had given him positive performance evaluations. But as the trial court found, the Board had and considered Whitehurst's performance evaluations, and Whitehurst did not contend either of his previous supervisors had percipient knowledge about the RSO designation. Whitehurst did not demonstrate he would have obtained a better outcome when he had different supervisors.

Whitehurst also argues he was harmed by the delay because he would have been judged less harshly as a lower-ranking employee and because it would have been easier for him to find a new job when he was eight years younger. Whitehurst also asserts the passage of time "made the situation look even worse" to the hearing examiner because by the time of the hearing the 77th Street property had not been billed for RSO fees for nearly 10 years. Because Whitehurst did not raise these arguments in the administrative proceedings or the trial court, however, he forfeited them. (See *Doe v. University of Southern California* (2018) 28 Cal.App.5th 26, 37; *Rand v. Board of Psychology* (2012) 206 Cal.App.4th 565, 587.)[4]

Forfeiture also applies to Whitehurst's argument the Department's charges were barred by laches, an argument he raises for the first time on appeal. (See *Blaser v. State Teachers' Retirement System* (2019) 37 Cal.App.5th 349, 378 [laches is forfeited if not raised in the trial court]; *City of Oakland v. Public*

---

[4] These purported concerns are also too speculative to constitute prejudice.

11

*Employees' Retirement System* (2002) 95 Cal.App.4th 29, 52 [laches issues "not litigated in the trial court" nor "timely raised in an administrative proceeding" are forfeited].) The laches argument fails on the merits. Analogizing his case to those under Government Code section 19635, which provides a three-year statute of limitations for discipline of state civil service employees, Whitehurst contends the Department had to discipline him within three years of the misconduct. Whitehurst cites *Brown v. State Personnel Bd.*, *supra*, 166 Cal.App.3d 1151, which involved the dismissal of a faculty member at a state university. Although the court in that case concluded Government Code section 19635 did not apply because the faculty member was not a state civil service employee, the court borrowed the three-year period "as a measure of the outer limit of reasonable delay in determining laches." (*Id*. at p. 1160.) The court in *Brown* stated that the "'effect of the violation of [the analogous] statute is to shift the burden to the plaintiff to prove that his delay was excusable and that the defendant was not prejudiced thereby.'" (*Id*. at p. 1161.)

Even if we were to borrow the three-year statute of limitations of Government Code section 19635 as a laches measure, doing so would not help Whitehurst because under that statute an agency must serve notice of an action based on "falsification of records" within "three years after the discovery of the . . . falsification." As discussed, there is no evidence in the record the Department discovered before 2017 that Whitehurst falsified the "built date" of the 77th Street property, and the Department promptly served Whitehurst with notice of the proposed discharge in April 2017. In addition, as discussed, substantial evidence supported the trial court's finding

Whitehurst suffered no prejudice from the purported delay, and laches requires prejudice. (See *Lam v. Bureau of Security & Investigative Services* (1995) 34 Cal.App.4th 29, 36 ["Delay alone ordinarily does not constitute laches"]; *Brown v. State Personnel Bd.*, *supra*, 166 Cal.App.3d at p. 1151 ["what generally makes delay unreasonable is that it results in prejudice"].)[5]

C.    *Whitehurst's Challenge to the Findings by the Trial Court and the Board Lacks Merit*

In his opening brief Whitehurst complains about various aspects of the Department's investigation, the administrative hearing, the Board's findings, and the trial court's ruling. We interpret these complaints as a challenge to the sufficiency of the evidence. Whitehurst, however, did not argue in the trial court substantial evidence did not support the Board's findings, and for this reason the trial court did not rule on the sufficiency of the evidence supporting those findings. Because Whitehurst did not

---

[5]    In the trial court Whitehurst also argued the Board violated his due process rights because the hearing examiner's report incorrectly stated Whitehurst was previously disciplined for falsification of city records, when in fact he was disciplined for violation of department rules. Whitehurst mentions this argument in passing in his opening brief, stating the hearing examiner "tainted his report" by including this "falsehood," but Whitehurst does not explain how the error prejudiced him. (See *Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 379 [""review is limited to issues which have been adequately raised and briefed""].) In any event, substantial evidence supported the trial court's finding any such error did not.

13

timely challenge the Board's findings in the trial court,[6] he may not challenge them for the first time now. (See *Franz v. Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 143 ["to allow the issue to be raised here, when not presented before the trial court, would undermine orderly procedure on administrative mandamus"]; *M.N. v. Morgan Hill Unified School Dist.* (2018) 20 Cal.App.5th 607, 632 [by not making the argument in the trial court, a student appealing from a judgment denying his petition for writ of administrative mandate forfeited the argument the district failed to make required factual findings]; *Noguchi v. Civil Service Com.* (1986) 187 Cal.App.3d 1521, 1540 [government employee who appealed from a judgment denying his petition for writ of administrative mandate, "[h]aving failed to present the issue to the superior court," was "in no position to raise [the] issue as error on . . . appeal"].)

In any event, substantial evidence supported the Board's findings. In its first charge the Board alleged Whitehurst used his "official position or office for personal gain or advantage." As a Department employee, Whitehurst had access to the Department's information management system. He used that access to change the date the 77th Street property was built. As an experienced inspector, Whitehurst undoubtedly knew

---

[6] In his reply brief in the trial court, Whitehurst challenged some of the Board's findings. The trial court, however, did not reach the sufficiency of the evidence because Whitehurst did not raise it in his opening brief. (See *Contractors' State License Bd. v. Superior Court* (2018) 23 Cal.App.5th 125, 130, fn. 3 [trial court has discretion to "not consider arguments first raised in a reply brief because of the potential unfairness to the opposing party, who is deprived of the opportunity to respond to the new argument"].)

14

changing the date would remove the property from the RSO and cause the City not to assess RSO fees. Similarly, Whitehurst used his access to the Department's system to cancel inspections on the 77th Street property and the 109th Street property, preventing the Department from finding potential violations Whitehurst would have to correct.

The evidence also supported the Board's finding on the second charge that Whitehurst engaged in "activity which constitutes a conflict of interest." As discussed, Whitehurst used his position to remove the 77th Street property from the RSO and to prevent the Department from inspecting that property and the 109th Street property. In addition to giving himself financial benefits arising from decreased costs, Whitehurst's actions removed legal protections from his tenants. Whitehurst's conduct violated rules 1 and 9 of the Department's Rules of Employee Conduct and rules I and IX of the City's Code of Ethics, both of which required Whitehurst to disqualify himself from making any decisions or recommendations concerning either property. Whitehurst's conduct also violated rule 2 of the Rules of Employee Conduct and Code of Ethics by eroding public confidence in the Department's impartiality.

In its third charge the Department alleged Whitehurst engaged in "unethical, inappropriate, and/or illegal behavior in conflict with job duties, on or off the job." Substantial evidence supported the Board's finding Whitehurst "'should have taken no role whatsoever in any decision involving property in which he or a family member had an interest.'" Rule 9 of the Department's Rules of Employee Conduct and rule IX of the City's Code of Ethics required Whitehurst to disqualify himself from matters where he had a financial interest. Whitehurst spent days of

15

testimony at the hearing focused on, and testifying about, whether he was authorized to change the date and whether the property was subject to the RSO. But as the hearing examiner stated, "The point that he seems to have missed is that he should not be the one making any of those determinations. He has an interest in what happens with the property, and thus recusal is the only thing he should have concerned himself with."

Substantial evidence also supported the Board's findings on the fourth charge for "falsifying city records." The Board found Whitehurst intentionally falsified the date the 77th Street property was built and improperly canceled inspections. Rejecting Whitehurst's assertion the Department should not have inspected the 77th Street property, the hearing examiner stated, "This was not [Whitehurst's] determination to make in the first place. Even if his conclusion is correct that the Department's policy was not to inspect Section 8 units if they had been recently inspected by another city department, this did not give him the authority to cancel the inspection of a property that he has an interest in. Taking actions on property that he had an interest in was not just marginally unethical, it was highly unethical, immoral, and inappropriate."

Finally, the same evidence supporting the findings on the first four charges also supported the finding on the sixth charge for "misusing delegated authority in the performance of duties." The Department put Whitehurst in a position of trust. He betrayed that trust by using his position to change dates and cancel inspections for properties in which he had a financial interest.

Whitehurst does not directly address most of the evidence supporting these findings. Instead, he argues he was right and

16

the Department was wrong about whether it should inspect Section 8 properties. Whitehurst spends much of his briefing defending his view of Department policy on that issue, arguing that the Department "unlawfully forced a duplicative inspection" of the 77th Street property, "in violation of City Council's instructions," and that the Board "prosecuted [him] for following City Council's instructions." But as the trial court found, "whether the City's policy did not require an inspection of the 77th Street Property is not relevant to the charges sustained." Whitehurst fundamentally misconstrues the basis for his discipline. The Department did not discipline Whitehurst for refusing to inspect Section 8 properties; it disciplined him for using his position as a Department employee and supervisor to take actions that financially benefitted him. Even if Whitehurst correctly interpreted the policy, it was a conflict of interest for him to be making any decisions about properties where he had a financial interest.

Whitehurst makes much of the fact that, although the hearing examiner found he violated Department rules by ignoring the policy regarding inspecting Section 8 properties, the Board voted not to sustain the fifth charge for violating Department rules. He suggests the Board's action vindicated him on the issue of inspecting Section 8 properties. What Whitehurst ignores is that the Board voted to sustain the five other charges against him. Those charges were based on Whitehurst's actions in changing the "built date" for the 77th Street property, canceling inspections of the 77th Street property and the 109th Street property, and failing to recuse himself from decisions related to both properties.

17

Whitehurst also argues the Department's Policies and Procedures Manual Rules of Employee Conduct did not require him to recuse himself from decisions concerning inspections of his properties. Pointing to a rule requiring employees who "have financial matters coming before . . . the Department in which they are employed" to "disqualify themselves," Whitehurst argues an "inspection notice is not a financial matter." What was a financial matter, however, was Whitehurst's ownership interest in the two properties, and Whitehurst gained financially by canceling inspections. As the hearing examiner found, "if there is no inspection then no violations can be found, thus there can be no requirement to correct those violations, and the corporation in which [Whitehurst] has an interest . . . would not have to spend funds to correct these potential violations."

D. *The 2016 Settlement Agreement Did Not Bar the Department From Disciplining Whitehurst*

Whitehurst argues the Board erred in failing to enforce a settlement agreement he entered into with the Department in June 2016, approximately four months before the Department learned Whitehurst canceled an inspection on property he owned. This argument fails too.

"'A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts.'" (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 789.) Where there is no conflict over extrinsic evidence, interpretation of a contract is a question of law, which we review de novo. (*Gilkyson v. Disney Enterprises, Inc.* (2021) 66 Cal.App.5th 900, 915; *Hanna v. Mercedes-Benz USA, LLC* (2019) 36 Cal.App.5th 493, 507.)

18

The settlement agreement was not related to the conduct that formed the basis for the Department's decisions to discipline Whitehurst and terminate his employment. Instead, the agreement expressly resolved "all issues" between the Department and Whitehurst "in connection with the proposed disciplinary action of an eleven (11) working day suspension." That proposed 11-day suspension (reduced to five days) was for knowingly approving a subordinate employee's falsified timesheet.

Whitehurst argues the settlement agreement precluded the Department from disciplining him for any "undefined acts that occurred prior to the agreement," including Whitehurst's conduct in 2009 when he changed the "built date" of the 77th Street property. To support this argument Whitehurst points to a provision that "placed [Whitehurst] on notice that any further violations of policies and procedures of [the Department] and the city will result in further disciplinary action up to and including discharge." He argues this provision meant the Department could discipline him *only* if he committed "further violations" (i.e., future violations) and not if it discovered he had committed past violations.

The plain language of the settlement agreement makes clear the parties did not intend the provision to have such a broad scope. The agreement resolved issues "in connection with the proposed disciplinary action." Neither party released claims related to anything other than the proposed 11-day suspension for approving a subordinate's falsified timesheet. Nor did the agreement, by warning Whitehurst the Department would discipline him for "further violations of policies and procedures," waive the Department's right to discipline him for past violations

19

unrelated to the proposed 11-day suspension. The trial court correctly ruled "the parties' settlement agreement did not preclude the Department from disciplining [Whitehurst] for acts other than those leading to his 5-day working suspension."

E. *The Penalty of Discharge Was Not Excessive*

Whitehurst contends the Board abused its discretion by imposing an excessive penalty. We will not disturb the Board's choice of penalty absent "'"'an arbitrary, capricious or patently abusive exercise of discretion.'"'" (*Cassidy v. California Bd. of Accountancy, supra,* 220 Cal.App.4th at pp. 627-628; see *Flippin v. Los Angeles City Bd. of Civil Service Comrs., supra,* 148 Cal.App.4th at p. 279.) "'Only in an exceptional case will an abuse of discretion be shown because reasonable minds cannot differ on the appropriate penalty.'" (*Pasos v. Los Angeles County Civil Service Com.* (2020) 52 Cal.App.5th 690, 700.)

"In considering whether . . . abuse occurred in the context of public employee discipline, . . . the overriding consideration in these cases is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[harm] to the public service.'" (*Skelly, supra,* 15 Cal.3d at p. 218; see *Pasos v. Los Angeles County Civil Service Com., supra,* 52 Cal.App.5th at p. 701.) "Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence." (*Skelly,* at p. 218; see *Pasos,* at p. 701.)

The Board did not abuse its discretion in upholding Whitehurst's discharge. The city's personnel policies authorized discharge as a penalty for a first offense for three of the five

charges the Board sustained against Whitehurst.[7]  And this was not Whitehurst's first offense.  Whitehurst had served a five-day suspension only a few weeks before committing the misconduct that gave rise to this case.

Whitehurst's misconduct was serious.  He abused his position to avoid paying fees and to cancel inspections on two properties he owned.  Whitehurst canceled inspections of his properties multiple times.  He failed to recognize his conflict of interest and disregarded Department and City rules requiring him to recuse himself from decisions affecting his financial interest.  His actions undermined public trust in the integrity of the Department.  Rather than acknowledge his mistakes, Whitehurst continued to insist he did nothing wrong, giving the Department every reason to believe he would continue to act inappropriately if allowed to continue in his position.

Daniel Gomez, director of the Department's Code Enforcement Division, testified it was appropriate to discharge Whitehurst because his violation of the "fundamental principle that you recuse yourself from making decisions on your own property" was "a significant violation of public trust."  That misconduct, combined with Whitehurst's refusal to allow inspectors to enter the 77th Street property during the inspection, caused Gomez to lose "trust and faith in Mr. Whitehurst's ability to make prudent decisions from this point forward."

---

[7]    According to the Department's policies and procedures manual, discharge is the only suggested penalty for a first offense for falsifying city records and is within the range of suggested penalties for using official position for personal gain or advantage and engaging in unethical, inappropriate, or illegal behavior.

## DISPOSITION

The judgment is affirmed.  The City is to recover its costs on appeal.


SEGAL, Acting P. J.


We concur:



FEUER, J.



MARTINEZ, J.