Opinion
 

 MORRISON, J.
 

 The Department of Motor Vehicles (DMV) awarded a contract for certified mail forms and the attendant software and printers to real party in interest Moore Business Systems, Inc. The disappointed bidder, plaintiff United Systems of Arkansas, Inc. (USA), protested the award. After its protest was denied, USA petitioned for a writ of mandate to compel DMV to award the contract to USA or to receive, consider, and act on its protest. USA appeals from the denial of its writ petition, contending DMV and the Department of General Services (DGS) (DMV and DGS are referred to collectively as the State) should be compelled to follow the statutory procedure for handling a bid protest by issuing a notice of intent to award, and that the Board of Control (the Board) should hear its protest. USA also seeks attorney fees under Code of Civil Procedure section 1021.5. We reverse.
 

 
 *1005
 
 Factual and Procedural Background
 

 DMV is required to send notice of license suspensions and revocations by certified mail. In May 1996, DMV issued a request for quotation (RFQ) to elicit bids for the purchase of approximately 1.5 million certified mail forms a year for a two-year period. The bidder was also to provide the support system (software and printer) to produce the final forms. The forms had to meet United States Postal Service requirements. In addition, there were specifications for both the printer and the software, including that the software be able to produce a specified bar code to reflect the recipient’s name and license number. The total cost of goods and services to be purchased would not exceed $500,000. If a proposal was responsive and selected, the bidder had to demonstrate to DMV that it met the technical requirements.
 

 Two bids were submitted. Each bidder was deemed responsive to the technical and administrative requirements. Moore submitted a bid of $476,506 and USA submitted a bid of $497,790. Moore was identified as the lowest responsive bid. A demonstration was held June 10; it was considered successful. The evaluation team recommended that Moore be awarded the purchase order. DMV issued a purchase order to Moore on June 24.
 

 On June 28, USA wrote DMV protesting the award of the contract because of “major deficiencies in the evaluation process.” It contended that the cost and time of assembly should be evaluated. USA further protested the award because the proposed form did not meet the specifications for the bar code.
 

 DGS responded that the protest had been referred to it for review and determination. DGS advised USA that since DMV’s RFQ was an informal procurement, under section 5210.2 of the State Administrative Manual, the protest would be determined by DGS.
 

 On July 23, DGS denied USA’s protest. Responding to the concerns raised by USA, DGS stated that assembly was not a requirement of the RFQ and that the proposed form met the technical requirements for the bar code as shown in die demonstration. DGS informed USA “[tjhis action constitutes the last administrative remedy available to your firm.”
 

 USA requested additional review of its protest, arguing the Moore’s form did not meet the specifications for the bar code. USA argued Moore’s form was a material deviation from the RFQ. Since USA’s proposal had been deemed responsive, upon an acceptable demonstration, it should be awarded the contract.
 

 
 *1006
 
 On September 14, DGS faxed a letter to USA, indicating that it had approved the award to Moore. DGS informed USA that its bid could not be considered because it contained certain nondisclosure statements and the information in the bid could not be kept confidential in a public offering. As a result, the only remaining bid was Moore’s, which complied with all requirements and was satisfactory for DMV’s purposes. Therefore, the purchase order to Moore issued June 24 remained in full force and effect.
 

 Five days later, counsel for USA wrote DGS and the Board. The letter stated that pursuant to Public Contract Code section 12102, subdivision (h), USA’s protest was submitted to the Board.
 

 On September 25, USA sent a letter to DGS, responding to its contention that USA’s bid was not in compliance with the RFQ.
 

 On September 30, the Board wrote USA’s counsel, informing him that USA’s protest was untimely since the contract had already been awarded to Moore.
 

 USA then petitioned for a peremptory writ of administrative mandamus or a peremptory writ of mandate challenging the award to Moore. USA contended the proper procedures for handling its protest had not been followed. The State failed to issue a notice of intent to award the contract, which notice triggers the time period for filing a protest with the Board. USA argued the Board erred in denying its protest as untimely. USA sought a hearing on its bid protest, a declaration that the award to Moore was void and unenforceable, and an injunction to prevent an illegal expenditure of funds.
 

 Both the State and Moore opposed the petition, arguing the protest procedures for an informal procurement applied and had been followed. In support of its opposition, the State provided the declaration of the DMV procurement analyst in charge of the RFQ. He stated the RFQ was an informal procurement. On the day the bids were opened, he had two phone calls with employees of USA discussing the result of the bid. The State also requested that the trial court take judicial notice of certain provisions of the State Administrative Manual and the State Contracting Manual.
 

 The trial court denied the petition. USA appeals from the judgment.
 

 Discussion
 

 I
 

 Initially, Moore and the State contend the appeal should be dismissed. They assert this action is barred because USA is not qualified to do business in California.
 

 
 *1007
 
 A foreign corporation is prohibited from transacting intrastate business in California without first obtaining a certificate of qualification from the Secretary of State. (Corp. Code, § 2105, subd. (a).) “A foreign corporation . . . which transacts intrastate business without complying with section 2105 shall not maintain any action or proceeding upon any intrastate business so transacted in any court in this state, . . .” (Corp. Code, § 2203, subd. (c).) “The defendant bears the burden of proving: (1) the action arises out of the transaction of intrastate business by a foreign corporation; and (2) the action was commenced by the foreign corporation prior to qualifying to transact intrastate business.”
 
 (United Medical Management, Ltd.
 
 v.
 
 Gatto
 
 (1996) 49 Cal.App.4th 1732, 1740 [57 Cal.Rptr.2d 600].) This showing has not been made.
 

 For purposes of qualification of a foreign corporation, “ ‘transact intrastate business’ means entering into repeated and successive transactions of its business in this state, other than interstate or foreign commerce.” (Corp. Code, § 191, subd. (a).) Soliciting or procuring orders where such orders require acceptance without the state to become contracts does not constitute transacting intrastate business.
 
 (Id.,
 
 § 191, subd. (c)(6).) Simply submitting a bid in response to the RFQ does not constitute transacting intrastate business. USA may maintain this action without a certificate of qualification from the Secretary of State.
 

 II
 

 Because electronic data processing systems have unique aspects, the Legislature has established a separate acquisition authority for them. (Pub. Contract Code, § 12100.) All such contracts are to be made by or under the supervision of DGS.
 
 (Ibid.)
 
 The Department of Information Technology and DGS are to maintain in the State Administrative Manual policies and procedures governing the acquisition and disposal of electronic data processing and telecommunications goods and services. (Pub. Contract Code, § 12102.) These policies and procedures shall provide for expeditious and value-effective acquisitions and the review and resolution of protests. (Pub. Contract Code, § 12101, subds. (a) & (e).) The Department of Information Technology has final authority over policies; DGS has final authority in the determination of procedures. (Pub. Contract Code, § 12105.)
 

 USA contends a writ of mandate should issue to compel the State to comply with the protest procedures set forth in Public Contract Code section 12102, subdivision (h). That subdivision provides: “Protest procedures shall be developed to provide bidders an opportunity to protest formally with respect to any acquisition conducted in accordance with this chapter. The
 
 *1008
 
 procedures shall provide that protests must be filed no later than five working days after the issuance of an intent to award. Authority to protest may be limited to participating bidders. The Director of General Services, or a person designated by the director, may consider and decide on initial protests. A decision regarding an initial protest shall be final. If prior to the last day to protest, any vendor who has submitted an offer files a protest with the department against the awarding of the contract or purchase order on the ground that his or her bid or proposal should have been selected in accordance with the selection criteria in the solicitation document, the contract or purchase order shall not be awarded until either the protest has been withdrawn or the State Board of Control has made a final decision as to the action to be taken relating to the protest. Within 10 calendar days after filing a protest, the protesting vendor shall file with the State Board of Control a full and complete written statement specifying in detail the grounds of the protest and the facts in support thereof.” (Pub. Contract Code, § 12102, subd. (h).)
 

 USA contends the protest procedure utilized here was deficient because USA was not given notice of an intent to award, which would have triggered the five-day period to protest to the Board, and the Board did not review USA’s protest.
 

 Moore and the State respond that notice of an intent to award and the Board review are not required in the informal bidding process under State Administrative Manual section 5210.2.
 
 [1]
 
 Further, they contend there was substantial compliance with Public Contract Code section 12102, subdivision (h).
 

 Section 5205 of the State Administrative Manual notes that statutes require competitive bidding of electronic data processing goods and services, but recognizes that “it is not practical or cost effective to solicit quotations from the entire universe of potential bidders in every instance.” Accordingly, DGS has established a threshold of $250,000 annual value or $500,000 total value; contracts above these values will be formally advertised. For contracts below the threshold, only informal quotations will be requested. This threshold is consistent with that of the State Contracting Manual, which designates a solicitation transaction of $500,000 or less as informal. Informal procurements are generally handled with a RFQ.
 

 Section 5210.2 of the State Administrative Manual provides: “Public Contract Code Section 12102(f) [now 12102(h)] establishes the appeal
 
 *1009
 
 process available to vendors who believe that the State should have selected their firm rather than another under the competitive rules of the transaction. All formally advertised competitive procurement protests are heard and resolved by the Board of Control. Protests involving informal quotations or protests of the procurement document or process prior to selection announcement will be heard and resolved by the Department of General Services.”
 

 USA observes that the protest procedures in subdivision (h) of Public Contract Code section 12102 apply to “any acquisition.” It contends the State cannot deprive it of its statutory rights to protest the bid by relying on guidelines set forth in the State Administrative Manual. It contends the State cannot rely on State Administrative Manual because it has not been properly adopted as a regulation under the Administrative Procedure Act (APA) (Gov. Code, § 11340 et seq.). Government Code section 11340.5 provides that an agency shall not “issue, utilize, enforce, or attempt to enforce any guideline, criterion, bulletin,
 
 manual,
 
 instruction, order, standard of general application, or other rule which is a regulation as defined in subdivision (g) of Section 11342, unless [it] has been adopted as a regulation and filed with the Secretary of State pursuant to this chapter.” (Italics added.) A regulation is defined as “every rule, regulation, order, or standard of general application . . . adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure, except one which relates only to the internal management of the state agency.” (Gov. Code, § 11342, subd. (b).) The APA applies to “the exercise of any quasi-legislative power conferred by any statute . . . .”
 
 (Id,.,
 
 § 11346.)
 

 The State Administrative Manual is a quasi-legislative act of an administrative agency.
 
 (Geftakys
 
 v.
 
 State Personnel Board
 
 (1982) 138 Cal.App.3d 844, 867 [188 Cal.Rptr. 305].)
 

 USA argues that if the State Administrative Manual is interpreted to change the statutory protest procedure for smaller bids, those designated as “informal procurements,” then it is a regulation that must be formally adopted before it can be enforced.
 

 The State contends the State Administrative Manual is exempt from the APA. Public Contract Code section 12102 provides: “The Department of Information Technology and the Department of General Services shall maintain, in the State Administrative Manual, policies and procedures governing the acquisition and disposal of electronic data processing and telecommunications goods and services.” The State contends this is a specific statute that
 
 *1010
 
 takes precedence over the general statute requiring compliance with the APA. We are not persuaded. Section 12102 only authorizes DGS to establish procedures; it does not speak to whether such procedures are subject to the APA. When the Legislature has intended to exempt regulations from the APA, it has done so by clear, unequivocal language. (See, e.g., Gov. Code, § 16487 [“The State Controller may establish procedures for the purpose of carrying out the purposes set forth in Section 16485. These procedures are exempt from the Administrative Procedure Act.”]; Gov. Code, § 18211 [“Regulations adopted by the State Personnel Board are exempt from the Administrative Procedure Act”]; Lab. Code, § 1185 [orders of Industrial Welfare Commission “expressly exempted” from the APA].)
 

 The procedures established by DGS and set forth in the State Administrative Manual are to “implement the intent of this chapter.” (Pub. Contract Code, § 12105.) The procedures regarding protests are designed to interpret and implement the provisions of Public Contract Code section 12102, subdivision (h). These implementing procedures are regulations. (Gov. Code, § 11342, subd. (g); see
 
 Armistead
 
 v.
 
 State Personnel Board
 
 (1978) 22 Cal.3d 198 [149 Cal.Rptr. 1, 583 P.2d 744].) The protest procedures for “informal procurements” set forth in the State Administrative Manual create a new rule, rather than simply applying an existing rule. This new rule is a regulation.
 
 (Aguilar
 
 v.
 
 Association for Retarded Citizens
 
 (1991) 234 Cal.App.3d 21, 27-28 [285 Cal.Rptr. 515].)
 

 “A major aim of the APA was to provide a procedure whereby people to be affected may be heard on the merits of proposed rules.”
 
 (Armistead
 
 v.
 
 State Personnel Board, supra,
 
 22 Cal.3d 198, 204.) Rules that relate “only to the internal management of the state agency” are exempt from the APA. (Gov. Code, § 11342, subd. (g).) Since the protest procedures affect the protest rights of third party bidders, they do not fall within the narrow internal management exception. “Further, because the Legislature adopted the APA to give interested persons the opportunity to provide input on the proposed regulatory action [citation], we are of the view that any doubt as to the applicability of the APA’s requirements should be resolved in favor of the APA.”
 
 (Grier
 
 v.
 
 Kizer
 
 (1990) 219 Cal.App.3d 422, 438 [268 Cal.Rptr. 244], disapproved on another point in
 
 Tidewater Marine Western, Inc.
 
 v.
 
 Bradshaw
 
 (1996) 14 Cal.4th 557, 577 [59 Cal.Rptr.2d 186, 927 P.2d 296].)
 

 Section 5210.2 of the State Administrative Manual is a regulation subject to the APA. Since it was not adopted as a regulation, it cannot be enforced. (Gov. Code, § 11340.5.)
 

 The State and Moore urge that only a responsive bidder is entitled to submit a bid protest to the Board
 
 (Digital Biometrics, Inc.
 
 v.
 
 Anthony
 
 (1993)
 
 *1011
 
 13 Cal.App.4th 1145, 1152-1153 [17 Cal.Rptr.2d 43]), and USA was not a responsive bidder. They each cite different alleged deficiencies in USA’s bid. The record is wholly inadequate to determine whether USA’s bid was responsive; USA’s bid is not included in any party’s appendix. We note DMV initially deemed both bids responsive. DGS later determined USA’s bid was nonresponsive. The trial court found USA’s contention that this finding was an abuse of discretion “appears to have merit.”
 

 The State and Moore contend that if Public Contract Code section 12102, subdivision (h) is applicable, there was substantial compliance with its provisions.
 

 “ ‘Substantial compliance, as the phrase is used in the decisions, means
 
 actual
 
 compliance in respect to the substance essential to every reasonable objective of the statute.’ ... Where there is compliance as to all matters of substance technical deviations are not to be given the stature of noncompliance. . . . Substance prevails over form.”
 
 (Southern Pac. Transportation Co.
 
 v.
 
 State Bd. of Equalization
 
 (1985) 175 Cal.App.3d 438, 442 [221 Cal.Rptr. 12], citations omitted, italics in original.)
 

 The substantial compliance doctrine has been applied in cases involving compliance with the statutory requirements for public contracts. In
 
 A & A Electric, Inc.
 
 v.
 
 City of King
 
 (1976) 54 Cal.App.3d 457 [126 Cal.Rptr. 585], the statute required the bidder to give written notice within five days of the opening of bids of any clerical or mathematical mistake, specifying in detail how the mistake was made. The court found no substantial compliance with this statute because details of the mistake and how it was made were never given.
 
 (Id.
 
 at pp. 464-465.) In
 
 Cal-Air Conditioning, Inc.
 
 v.
 
 Auburn Union School Dist.
 
 (1993) 21 Cal.App.4th 655 [26 Cal.Rptr.2d 703], the statute required that an inadvertent error in listing a subcontractor be corrected by written notice within two days of opening of the bid. Notice must be given to the awarding entity, the subcontractor listed in error, and the intended subcontractor. The purpose of the notice requirement was to force the bidder to assert the error in short order and thus prevent bid shopping. The court found the purpose of the statute was met where the bidder faxed a letter to the district’s architect the day after bid opening informing him of the error and called the subcontractor that had been listed in error that same day. Although written notice was not given to that subcontractor until four or five days after opening the bid, the subcontractor was able to submit a timely objection. There was no detrimental reliance because that subcontractor had received prompt notice of the alleged mistake.
 
 (Id.
 
 at p. 669.) Since the reasonable statutory objectives were met, the court found substantial compliance.
 
 (Ibid.)
 

 
 *1012
 
 USA contends two requirements of the statutory protest procedure were not met. No notice of intent to award was issued and the protest was not reviewed and determined by the Board. The purpose of the notice of intent to award a contract is to trigger the time period for the losing bidder to protest the award. Here, although there was no intent to award issued, USA did learn that Moore was the winning bidder and was able to file a protest. We find substantial compliance with that aspect of the protest procedure under Public Contract Code section 12102, subdivision (h).
 

 Public Contract Code section 12102, subdivision (h) provides that a protest based on the ground that the protester’s bid should have been selected will be reviewed by the Board. USA protested that it should have been awarded the contract instead of Moore. Its protest was determined and denied by DGS; the Board summarily denied the protest as untimely. USA contends if it had received a notice of intent to award, it would have submitted a timely bid protest to the Board. Further, USA argues that review by DGS cannot be construed as the same as review by the Board. We agree. DGS is a state agency. “The Board of Control is an administrative board with limited quasi-judicial powers.”
 
 (.Digital Biometrics, Inc.
 
 v.
 
 Anthony, supra,
 
 13 Cal.App.4th 1145, 1153.) The Board consists of the Director of DGS, the Controller, and a third member appointed by the Governor. (Gov. Code, § 13901.) There are detailed procedures for a hearing before the board. (Cal. Code Regs., tit. 2, §§ 615.1-619.7.) Since the Board is a more independent entity than the DGS, and has specified procedures for a hearing on a bid protest, review of a protest by DGS cannot be considered substantial compliance with the requirement of review and determination of a protest by the Board.
 

 Since USA’s bid protest was not handled in conformity with Public Contract Code section 12102, subdivision (h), the petition for a writ of mandate should have been granted.
 

 Ill
 

 USA contends it should be awarded attorney fees under Code of Civil Procedure section 1021.5. Code of Civil Procedure section 1021.5 is a codification of the private attorney general doctrine. Its fundamental objective is to encourage suits effecting a strong public policy by awarding attorney fees to those whose successful efforts obtain benefits for a broad class of citizens.
 
 (Hull
 
 v.
 
 Rossi
 
 (1993) 13 Cal.App.4th 1763, 1767 [17 Cal.Rptr.2d 457].) Section 1021.5 permits a court to award attorney fees to a successful party “in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit,
 
 *1013
 
 whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, ... are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.”
 

 An award of attorney fees under Code of Civil Procedure section 1021.5 is not appropriate where the plaintiff brought suit to protect its property rights and not to further a significant public interest
 
 (Terminal Plaza Corp.
 
 v.
 
 City and County of San Francisco
 
 (1986) 177 Cal.App.3d 892, 914 [223 Cal.Rptr. 379]), or the public benefit gained is coincidental to plaintiff’s strong personal economic interests
 
 (Pacific Mutual Life Ins. Co.
 
 v.
 
 State Bd. of Equalization
 
 (1996) 41 Cal.App.4th 1153, 1165 [49 Cal.Rptr.2d 99]). We find an award of attorney fees is not appropriate in this case. USA brought suit challenging the protest procedures utilized in “informal procurements” in order to have a chance at obtaining a contract worth almost half a million dollars. As such, this suit does not meet the requirements of section 1021.5.
 

 Disposition
 

 The judgment is reversed with directions to the trial court to enter a judgment granting the petition, to issue a peremptory writ of mandate directing the Board to receive, consider, and act on the protest of USA, and to issue such injunctive and other relief as may be appropriate and consistent with this opinion. USA shall recover its costs on appeal.
 

 Blease, Acting P. J., and Raye, J., concurred.
 

 The petition of all respondents for review by the Supreme Court was denied August 12, 1998.
 

 [1]
 

 The trial court took judicial notice of this and other provisions of the State Administrative Manual and certain provisions of the State Contracting Manual, overruling USA’s objections. USA does not renew its objections on appeal.