[No. C041310. Third Dist. July 2, 2003.]

SAN JOAQUIN HELICOPTERS, Plaintiff and Appellant, v.
DEPARTMENT OF FORESTRY et al., Defendants and Respondents,
DYNCORP TECHNICAL SERVICES, Real Party in Interest and
Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Parts I and IV are not ordered for publication. (See Cal. Rules of Court, rules 976(b) and 976.1.)

## COUNSEL

Best, Best & Krieger, Paul F. Dauer and Jennifer L. Dauer for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Mary E. Hackenbracht, Assistant Attorney General, Sara Russell and Deborah A. Wordham, Deputy Attorneys General, for Defendants and Respondents.

Rogers, Joseph, O'Donnell & Phillips, Neil H. O'Donnell and Aaron P. Silberman for Real Party in Interest and Respondent.

OPINION

**MORRISON, J.**—San Joaquin Helicopters appeals from denial of its petition for a writ of mandate challenging the validity of an interim contract between State of California (the State) Department of Forestry and Fire Protection (CDF) and DynCorp Technical Services for maintenance services on aircraft used in fighting fires. San Joaquin Helicopters contends CDF and the Department of General Services (DGS) had no authority to enter into the interim contract while its bid protest was pending; the State's reliance on section 6.05 of the State Contracting Manual to authorize the interim contract was misplaced as the manual was not adopted as a regulation pursuant to the Administrative Procedure Act; and Government Code section 14615.1, which purports to exempt DGS from the requirements of the Administrative Procedure Act when acting under the State Contracting Manual, is invalid as it was enacted in violation of the single-subject rule of article IV, section 9 of the California Constitution.

■ We conclude section 6.05 of the State Contracting Manual gave CDF and DGS authority to enter into the interim contract while the bid protest was pending. Government Code section 14615.1 exempted DGS, in actions taken with respect to the State Contracting Manual, from the requirements of the Administrative Procedure Act and its enactment did not violate the single-subject rule. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

CDF had a contract with San Joaquin Helicopters for maintenance services for aircraft used to fight fires. The contract was scheduled to expire November 30, 2001. In May 2001, CDF issued a request for proposals for a new maintenance contract. San Joaquin Helicopters and DynCorp submitted responses. CDF rejected both proposals as nonresponsive and San Joaquin Helicopters and DynCorp resubmitted proposals. In late August 2001, CDF issued a notice of intent to award the contract to DynCorp.

San Joaquin Helicopters protested the proposed award. After various delays, a hearing on the bid protest was scheduled for early December, after the existing contract was to expire. San Joaquin Helicopters offered to extend the existing contract at an increased rate. Instead, CDF and DGS decided to enter into an interim sole source contract with DynCorp for the period of the protest. The State's authority for entering into this contract was section 6.05 of the State Contracting Manual, which permits a sole source contract while a bid protest is pending under specified circumstances. San Joaquin Helicopters formally objected to this interim contract.

On November 19, 2001, San Joaquin Helicopters filed a petition for a writ of mandate directing CDF to refrain from awarding a new contract while the

bid protest was pending and to extend the existing contract with San Joaquin Helicopters. The petition also sought a temporary restraining order to prevent the existing contract from expiring. The trial court issued an alternative writ, but denied the request for a temporary restraining order.

On November 26, 2001, San Joaquin Helicopters offered to extend its soon-to-expire contract at the current rates. The next day, San Joaquin Helicopters again applied for a temporary restraining order to restrain CDF from awarding a sole source contract to DynCorp. The trial court again denied the request.

CDF entered into an interim sole source contract with DynCorp.

San Joaquin Helicopters amended its petition for a writ of mandate to compel CDF to refrain from making payment on the interim contract and to recover any funds paid on the contract. San Joaquin Helicopters sought a declaration that the contract was void as being in excess of the State's authority to contract. In addition, San Joaquin Helicopters sought attorney fees.

San Joaquin Helicopters argued that CDF and DGS had no authority to enter into a sole source contract without competitive bidding because no regulations permitting such a contract had been adopted pursuant to the Administrative Procedure Act. Government Code section 14615.1, which purported to exempt DGS from the requirements of the Administrative Procedure Act, was invalid because it was enacted as part of a bill concerning the disposal of surplus property and so violated the single-subject rule. Even if there was authority for entering into the sole source contract, CDF and DGS failed to comply with the requirements of section 6.05 of the State Contracting Manual and Executive Order No. W-103-94. Under section 6.05, a sole source contract is permitted during a bid protest only if the existing contractor does not wish to continue at the same or lower rates, and San Joaquin Helicopters did wish to continue at the same rates. The executive order permits a sole source contract only during an emergency or if the public health and safety so requires. Neither condition was present here.

The trial court denied the petition. It found it was a close call whether Senate Bill No. 1645 (1997–1998 Reg. Sess.) (Senate Bill 1645), which enacted Government Code section 14615.1, violated the single-subject rule, but in deference to the Legislature, it concluded there was no constitutional violation. The court found CDF and DGS had authority under the State Contracting Manual to enter into the interim contract.

## DISCUSSION

### I*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

■ Generally, state agencies are required to secure competitive bids for contracts for services. (Pub. Contract Code, § 10340.) A service contract may be awarded without competitive bidding if it meets the conditions prescribed by DGS pursuant to section 10348, subdivision (a) of the Public Contract Code. (*Id.*, § 10340, subd. (a).) Regulations authorized by section 10348 were adopted and then repealed. (Cal. Code Regs., tit. 2, §§ 1896.200–1896.203.)

In entering into a single source contract with DynCorp during the bid protest, the State acted pursuant to section 6.05 of the State Contracting Manual, which permits a sole source contract in that situation "[i]f there is no existing contractor or if the contractor does not wish to continue." San Joaquin Helicopters contends that since section 6.05 of the State Contracting Manual was not adopted pursuant to the Administrative Procedure Act, it is without legal effect. (See *United Systems of Arkansas, Inc. v. Stamison* (1998) 63 Cal.App.4th 1001, 1008 [74 Cal.Rptr.2d 407] [provision of State Administrative Manual is a regulation subject to Administrative Procedure Act].) The State and DynCorp contend section 6.05 of the State Contracting Manual did not have to comply with the Administrative Procedure Act because it was expressly exempted by Government Code section 14615.1. San Joaquin Helicopters contends Government Code section 14615.1, which was originally enacted as part of Senate Bill 1645 in the 1998 session, is unconstitutional because its enactment violated the single-subject rule.

The single-subject rule is set forth in article IV, section 9 of the California Constitution, which provides in part as follows: "A statute shall embrace but one subject, which shall be expressed in its title. If a statute embraces a subject not expressed in its title, only the part not expressed is void."[1] "The

---

*See footnote, *ante,* page 1549.

[1] The requirements of section 9 relating to the subject of an act and its title are independent provisions. "A statute must comply with both the requirement that it be confined to one subject and with the command that this one subject be expressed in its title. [Citations.]" (*Harbor v. Deukmejian* (1987) 43 Cal.3d 1078, 1096 [240 Cal.Rptr. 569, 742 P.2d 1290].) The title of Senate Bill 1645 is: "An act to amend Section 14664 of, and to add Section 14615.1 to, the Government Code, to add Article 6.5 (commencing with Section 10389.1) to Chapter 2 of Part 2 of Division 2 of the Public Contract Code, and to amend Section 2 of Chapter 625 of the Statutes of 1991, Section 1 of Chapter 648 of the Statutes of 1992, Section 1 of Chapter 317 of

single-subject rule essentially requires that a statute have only one subject matter and that the subject be clearly expressed in the statute's title. The rule's primary purpose is to prevent 'logrolling' in the enactment of laws. This disfavored practice occurs when a provision unrelated to a bill's main subject matter and title is included in it with the hope that the provision will remain unnoticed and unchallenged. By invalidating these unrelated clauses, the single subject rule prevents the passage of laws that otherwise might not have passed had the legislative mind been directed to them. [Citation.]" (*Homan v. Gomez* (1995) 37 Cal.App.4th 597, 600 [43 Cal.Rptr.2d 647].)

■ The single-subject rule is not to receive a narrow or technical construction, but it is to be liberally construed to uphold proper legislation and not used to invalidate legitimate legislation. (*Evans v. Superior Court* (1932) 215 Cal. 58, 62 [8 P.2d 467].) "Numerous provisions, having one general object, if fairly indicated in the title, may be united in one act. Provisions governing projects so related and interdependent as to constitute a single scheme may be properly included within a single act. [Citation.] The legislature may insert in a single act all·legislation germane to the general subject as expressed by its title and within the field of legislation suggested thereby. [Citation.] Provisions which are logically germane to the title of the act and are included within its scope may be united. The general purpose of a statute being declared, the details provided for its accomplishment will be regarded as necessary incidents. [Citations.] ... A provision which conduces to the act, or which is auxiliary to and promotive of its main purpose, or has a necessary and natural connection with such purpose is germane within the rule. [Citation.]" (*Id.* at pp. 62–63.) "[A] measure complies with the rule if its provisions are either functionally related to one another or are reasonably germane to one another or the objects of the enactment." (*Harbor v. Deukmejian, supra,* 43 Cal.3d 1078, 1100.)

■ There is a similar single-subject rule for initiatives. Article II, section 8, subdivision (d) of the California Constitution provides: "An initiative measure embracing more than one subject may not be submitted to the electors or have any effect." ■ The reasonably germane test for the statutory single-subject rule is also applied to the initiative single-subject rule. (*Perry v. Jordan* (1949) 34 Cal.2d 87, 92–93 [207 P.2d 47].) Therefore, cases applying the rule to initiatives are useful in applying the single-subject rule to legislation.

■ Not only is a statute limited to a single subject, that subject cannot be one of excessive generality. In *Brosnahan v. Brown* (1982) 32 Cal.3d 236 [186 Cal.Rptr. 30, 651 P.2d 274], the Supreme Court upheld Proposition 8, known as the Victims' Bill of Rights, against a single-subject challenge. The

the Statutes of 1993, and Section 1 of Chapter 391 of the Statutes of 1994, relating to state property." (Stats. 1998, ch. 731.) San Joaquin Helicopters does not challenge the title.

court found each of its several facets was reasonably germane to the general subject of promoting the rights of actual or potential crime victims. (*Id.* at p. 247.) The court cautioned, however, that initiative proponents did not have a blank check to draft measures containing unduly diverse or extensive provisions bearing no reasonable relationship to each other or a general object. "The single-subject rule indeed is a constitutional safeguard adopted to protect against multifaceted measures of undue scope. For example, the rule obviously forbids joining disparate provisions which appear germane only to topics of excessive generality such as 'government' or 'public welfare.' " (*Id.* at p. 253.)

Bills or initiatives of excessive generality have been struck down because they violate the single-subject rule. In *Harbor v. Deukmejian, supra,* 43 Cal.3d 1078, the bill at issue was a trailer bill that amended, repealed or added approximately 150 sections to over 20 codes. The single subject of "fiscal affairs" or "statutory adjustments" was too broad to comply with the single-subject rule. (*Id.* at pp. 1100–1101.) A proposed initiative that would restrict legislative salaries and transfer reapportionment from the Legislature to the Supreme Court could not be upheld under the general subject of voter involvement or voter approval of political issues. (*Senate of the State of Cal. v. Jones* (1999) 21 Cal.4th 1142, 1162–1163 [90 Cal.Rptr.2d 810, 988 P.2d 1089].)

In *California Trial Lawyers Assn. v. Eu* (1988) 200 Cal.App.3d 351 [245 Cal.Rptr. 916], this court invalidated a proposed initiative for no-fault insurance. Inconspicuously placed in the middle of a 120-page document were two provisions addressing campaign contributions and conflicts of interests of elected officials who receive such contributions. We found no connection between the stated purpose of the initiative to rein in increasing insurance premiums and these two provisions. (*Id.* at pp. 358–359.) That the initiative's provisions all had an effect on the business of insurance was insufficient to satisfy the reasonably germane test. "Contemporary society is structured in such a way that the need for and provision of insurance against hazards and losses pervades virtually every aspect of life. Association's approach would permit the joining of enactments so disparate as to render the constitutional single-subject limitation nugatory." (*Id.* at p. 360.)

An initiative designed to reduce toxic pollution, protect seniors from fraud and deceit in the issuance of insurance policies, raise health and safety standards in nursing homes, preserve the integrity of the election process, and fight apartheid violated the single-subject rule. (*Chemical Specialties Manufacturers Assn., Inc. v. Deukmejian* (1991) 227 Cal.App.3d 663 [278 Cal.Rptr. 128].) The proponents' objective of providing the public with accurate information in advertising was too broad a subject, especially where the initiative required unrelated state agencies to take actions. (*Id.* at p. 671.)

■ While the single subject may not be one of excessive generality, a bill or initiative designed as comprehensive reform is allowable. In *Evans v. Superior Court, supra*, 215 Cal. 58, an act to establish a Probate Code, containing approximately 1700 sections and covering wills, succession, administration of estates, and wards and guardians complied with the single-subject rule as each provision was germane to and had a connection to probate law and procedure. ( *Id.* at p. 64.) Various initiatives to accomplish comprehensive reform have also been upheld against a single-subject challenge. (See, e.g., *Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 229–232 [149 Cal.Rptr. 239, 583 P.2d 1281] [upholding the Jarvis–Gann Initiative (Proposition 13)]; *Fair Political Practices Com. v. Superior Court* (1979) 25 Cal.3d 33, 41 [157 Cal.Rptr. 855, 599 P.2d 46] [upholding Political Reform Act of 1974 (Proposition 9)]; *Brosnahan v. Brown, supra*, 32 Cal.3d 236, 245–253 [upholding the Victims' Bill of Rights (Proposition 8)]; *Raven v. Deukmejian* (1990) 52 Cal.3d 336, 346–349 [276 Cal.Rptr. 326, 801 P.2d 1077] [upholding Crime Victims Justice Reform Act of 1999 (Proposition 115)]; *Legislature v. Eu* (1991) 54 Cal.3d 492, 512–514 [286 Cal.Rptr. 283, 816 P.2d 1309] [upholding Political Reform Act of 1990 (Proposition 140 )].)

■ Budget bills that substantively change existing law violate the single-subject rule. " ' " '[T]he budget bill may deal only with one subject of appropriations to support the annual budget,' " and thus " 'may not constitutionally be used to grant authority to a state agency that the agency does not otherwise possess' " or to " 'substantively amend[] and change[] [e]xisting statute law.' " ' [Citations.]" (*Planned Parenthood Affiliates v. Swoap* (1985) 173 Cal.App.3d 1187, 1199 [219 Cal.Rptr. 664].) Thus, a section of a budget bill that restricted family planning funds for organizations that provided abortion–related services violated the single-subject rule. (*Id.* at p. 1201.) And a provision of a budget bill that excluded those convicted of certain sex crimes from receiving family visits in prison also violated the constitutional provision. (*Homan v. Gomez, supra*, 37 Cal.App.4th 597, 600–602.)

With the parameters of the single-subject rule in mind, we turn to the provisions of Senate Bill 1645. The first section of Senate Bill 1645, the one at issue here, adds section 14615.1 to the Government Code. ■ That section exempts DGS from the Administrative Procedure Act in maintaining, developing, or prescribing processes, procedures, or policies in connection with the administration of its duties under certain provisions of the Government Code and the Public Contract Code. It applies to actions taken by DGS with respect to the State Administrative Manual and the State Contracting Manual. (Stats. 1998, ch. 731, § 1.) The other provisions of Senate Bill 1645 grant the director of DGS authority to sell, convey or exchange properties not needed by state agencies with the consent of the agency, require DGS to first offer surplus state personal property to school districts, authorize the director

of DGS to sell, exchange or lease certain specified surplus state property, exempt certain of these transfers from the California Environmental Quality Act, require the reservation of certain mineral rights, and rescind the director's existing authority to sell, exchange, or lease specified parcels. (Stats. 1998, ch. 731, §§ 1.1 et seq.)

San Joaquin Helicopters contends the subject of the bill is limited to the disposal of surplus state property. The first section of Senate Bill 1645 violates the single-subject rule because it relates to an entirely different subject, exempting DGS from the Administrative Procedure Act in maintaining, developing or prescribing processes, procedures or policies. This exemption is not functionally related or reasonably germane to the disposal of surplus state property. (*Harbor v. Deukmejian, supra,* 43 Cal.3d 1078, 1100.) Further, San Joaquin Helicopters contends there is evidence of improper logrolling in the inclusion of Government Code section 14615.1 in Senate Bill 1645. First, section 14615.1 was added to Senate Bill 1645 only one week before the bill was passed by the Legislature. Second, the bill was referred to solely as the surplus property bill, even after it was passed, by both the bill's author and the Legislative Counsel's Digest.

The State and DynCorp respond first that San Joaquin Helicopters ignores the strong presumption in favor of finding a statute constitutional. (*County of Sonoma v. State Energy Resources Conservation etc. Com.* (1985) 40 Cal.3d 361, 368 [220 Cal.Rptr. 114, 708 P.2d 693] '.) "In considering the constitutionality of a legislative act we presume its validity, resolving all doubts in favor of the Act. Unless conflict with a provision of the state or federal Constitution is clear and unquestionable, we must uphold the Act. [Citations.]" (*California Housing Finance Agency v. Elliott* (1976) 17 Cal.3d 575, 594 [131 Cal.Rptr. 361, 551 P.2d 1193].)

Second, the single-subject rule "is not to receive a narrow or technical construction in all cases, but is to be construed liberally to uphold proper legislation, all parts of which are reasonably germane. [Citation.] The provision was not enacted to provide means for the overthrow of legitimate legislation. [Citation.]" (*Evans v. Superior Court, supra,* 215 Cal. at p. 62.)

■ Presuming Senate Bill 1645 is a constitutional enactment, and giving the single-subject rule a liberal construction, the subject of Senate Bill 1645 can be viewed as the operation and administration of DGS with respect to state property. Government Code section 14615.1, which exempts DGS processes, procedures and policies from the Administrative Procedure Act, is reasonably germane to this general subject. The operation and administration of DGS with respect to state property is not a subject of excessive generality like government, public welfare, fiscal affairs, the business of insurance, or

truth in advertising. It is limited to one state agency and its functions with respect to a certain type of property, state property. While most contracts for supplies, services and construction relate directly to state property (as here, maintenance for state aircraft), it is true that some service contracts may not relate to state property, such as the provision of services for indigents or prisoners. " '[I]t is well established that a [measure] may have "collateral effects" without violating the single-subject rule. [Citations.]' [Citation.]" (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 578 [117 Cal.Rptr.2d 168, 41 P.3d 3] [upholding the Gang Violence and Juvenile Crime Prevention Act of 1998 (Proposition 21) despite the collateral effect of changes to the lock-in date for determining strike offenses.])

Nor do we find persuasive San Joaquin Helicopters' evidence of "logrolling." The addition of Government Code section 14615.1 occurred late in the legislative process, only one week before the bill was passed. But as the trial judge, a former legislator, noted: "A week is a century in the Legislature." More importantly, the provision was not hidden, as were the provisions for campaign contributions and conflicts of interest in *California Trial Lawyers Assn. v. Eu, supra*, 200 Cal.App.3d 351. The addition of Government Code section 14615.1 was prominently featured as the first section of the bill. It was clearly described in the Legislative Counsel's Digest: "This bill would provide that the processes, procedures, or policies maintained, developed, or prescribed by the department in connection with the administration of its duties under specified provisions of the Public Contract Code or the State Contract Act shall be exempt from the Administrative Procedure Act, including actions taken by the department with respect to the State Administrative Manual and the State Contracting Manual." (Stats. 1998, ch. 731.)

The enactment of Government Code section 14615.1 as part of Senate Bill 1465 did not violate the constitutional single-subject rule.

## III

San Joaquin Helicopters contends that even if Government Code section 14615.1, as originally enacted, did not violate the single-subject rule, the State still could not rely on that statute to exempt section 6.05 of the State Contracting Manual from the Administrative Procedure Act. That is so because the original version of Government Code section 14615.1 applied only to the State Contract Act, which governs public works projects, and not contracts for services. In 2000, Government Code section 14615.1 was amended to apply the exemption to all contracts under part 2 division 2 of the Public Contract Code, not just public works contracts under the State Contract Act.

As originally enacted, Government Code section 14615.1 provided: "Where the Legislature directs or authorizes the department to maintain, develop, or prescribe processes, procedures, or policies in connection with the administration of its duties under this chapter, Chapter 2 (commencing with Section 14650), *or the State Contract Act (Part 2 (commencing with Section 10100) of Division 2 of the Public Contract Code),* the action by the department shall be exempt from the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340), Chapter 4 (commencing with Section 11370), Chapter 4.5 (commencing with Section 11400), and Chapter 5 (commencing with Section 11500)). This section shall apply to actions taken by the department with respect to the State Administrative Manual and the State Contracting Manual." (Stats. 1998, ch.731, § 1, italics added.)

San Joaquin's Helicopters' argument is based on the publishers' titles in the annotated versions (both West's and Deering's) of the Public Contract Code. Part 2 of division 2 of the Public Contract Code is entitled "Contracting By State Agencies." It consists of several chapters. Chapter 1 (Pub. Contract Code, §§ 10100–10265) is entitled "State Contract Act" and deals with public works projects. Chapter 2 (Pub. Contract Code, § 10290 et seq.) provides for state procurement of materials, supplies, equipment, and services. The contract at issue here falls under chapter 2. In 2000, Government Code section 14615.1 was amended. (Stats. 2000, ch. 590, § 4.) The amendment deleted the reference to the State Contract Act and instead referred only to "Part 2 (commencing with Section 10100) of Division 2 of the Public Contract Code." (*Ibid.*)

San Joaquin Helicopters contends that since the original version of Government Code section 14615.1 referred expressly to "the State Contract Act," it referred only to chapter 1 of part 2 of division 2 of the Public Contract Code. Thus, the exemption from the Administrative Procedure Act was not available to actions taken under section 6.05 of the State Contracting Manual with respect to a contract for services.

San Joaquin Helicopters further contends the enactment of the amendment to Government Code section 14615.1 violated the single-subject rule because it was included in a bill, Senate Bill No. 2066 (1999-2000 Reg. Sess.) (Senate Bill 2066), that otherwise dealt exclusively with school facilities.

The trial court found it unnecessary to determine if the amendment to Government Code section 14615.1, Senate Bill 2066, violated the single-subject rule. The court concluded the amendment was only a technical correction to clean up the language and not to make a substantive change. Government Code section 14615.1, as originally enacted, applied to all of part 2 of division 2 of the Public Contract Code, not just chapter 1. Finding

the legislative history unhelpful on this issue, the court relied primarily on the conclusion there was no rational basis to limit Government Code section 14615.1 to only chapter 1.

"Initially, '[a]s in any case of statutory interpretation, our task is to determine afresh the intent of the Legislature by construing in context the language of the statute.' [Citation.] In determining such intent, we begin with the language of the statute itself. [Citation.] That is, we look first to the words the Legislature used, giving them their usual and ordinary meaning. [Citation.] 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." ' [Citation.] 'But when the statutory language is ambiguous, "the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes." ' [Citation.]" (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 192–193 [96 Cal.Rptr.2d 463, 999 P.2d 686].)

San Joaquin Helicopters contends there is no ambiguity in the statute; it clearly refers only to the State Contract Act or chapter 1. Since we must seek to give meaning to every word (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159 [278 Cal.Rptr. 614, 805 P.2d 873]), the original version of Government Code section 14615.1 must be limited to the State Contract Act and the amendment made a substantive change.

We agree that the literal language of Government Code section 14615.1 as originally enacted is not ambiguous. We disagree, however, as to what the reference to "the State Contract Act" means. Based on the publishers' titles in the annotated codes, San Joaquin Helicopters asserts it means only chapter 1. It is well established, however, that the publishers' titles are unofficial and not part of the act as adopted by the Legislature. (*People v. Avanessian* (1999) 76 Cal.App.4th 635, 641–642 [90 Cal.Rptr.2d 367] and fn. 6.) "Title or chapter headings are unofficial and do not alter the explicit scope, meaning, or intent of a statute. [Citations.]" (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 602 [7 Cal.Rptr.2d 238, 828 P.2d 140] .) In contrast to the publishers' titles, Public Contract Code section 10100 provides: "This *part* may be cited as the State Contract Act." (Italics added.) The Legislature gave the title "State Contract Act" to the part, not the chapter. While part 2 contained only one chapter when originally enacted (Stats. 1981, ch. 306, § 2, pp. 1434–1447), section 10100 literally applies to the entire part 2. Thus, the Legislature's reference to the "State Contract Act" refers to all of part 2 of division 2 and there is no ambiguity or conflict in this reference in Government Code section 14615.1.

This plain meaning interpretation of Government Code section 14615.1— that it applies to all of part 2 of division 2 of the Public Contract Code—is

reinforced by the statutory scheme. Government Code section 14615.1 applies to the duties of DGS under two specified chapters of the Government Code, as well as portions of the Public Contract Code. These two chapters in the Government Code are "General Provisions" (Gov. Code, § 14600 et seq.), including the designation of a procurement officer in DGS (Gov. Code, § 14620), and *"Powers and Duties, Generally"* (Gov. Code, § 14650 et seq., original italics). Since these two chapters cover the broad range of duties of DGS, it is reasonable to conclude the reference to duties under the Public Contract Code was also intended to be broad.

The reference to the State Contracting Manual supports this view. The last sentence of section 14615.1 provides: "This section shall apply to actions taken by the department with respect to the State Administrative Manual and the State Contracting Manual." (Gov. Code, § 14615.1.) The State Contracting Manual states that it "deals primarily with services, consultant services contracts, and interagency agreements."[2] While the manual does apply to certain small public works projects, it is unlikely the Legislature would have made specific reference to exempting actions under the State Contracting Manual if the exemption applied in only a very few cases.

The background of the statute also supports the interpretation offered by the State and DynCorp. Three months before Senate Bill No. 1645 was passed, this court issued its decision in *United Systems of Arkansas, Inc. v. Stamison, supra,* 63 Cal.App.4th 1001 [ 74 Cal.Rptr.2d 407]. We held the State could not rely on a provision of the State Administrative Manual that changed the protest procedures for bids for electronic data processing goods and services because that provision was a regulation and it had not been adopted in accordance with the Administrative Procedure Act. (*Id.* at pp. 1007–1012.) The enactment of Government Code section 14615.1, exempting DGS from the Administrative Procedure Act in actions taken under the State Administrative Manual and the State Contracting Manual, appears to be a direct legislative response to our decision. Since the contract at issue in *United Systems of Arkansas* was not a public works contract, the reasonable interpretation is that the Legislature intended the exemption from the Administrative Procedure Act to be broader so as to cover contracts such as the one at issue in *United Systems of Arkansas.*

Finally, the legislative history of Senate Bill No. 2066 shows that in analyses of the bill the amendment to Government Code section 14615.1 was

---

[2] DynCorp has provided selected portions of the State Administrative Manual and the State Contracting Manual and requested that we take judicial notice of them, as well as of certain bills. We grant DynCorp's motion. (Evid. Code, §§ 452, subd. (c); 459, subd. (a).) We also grant the State's motion for judicial notice. (Evid. Code, §§ 452; 459, subd. (a).)

referred to simply as a technical correction. While the view of a subsequent Legislature is not dispositive of the intent of a previous Legislature, it certainly lends support in determining the reasonable interpretation.

San Joaquin Helicopters contends the 1998 version of Government Code section 14615.1 cannot apply to all of part 2 of division 2 of the Public Contract Code because such an interpretation would require a disfavored implied repeal of Public Contract Code section 10383.8. Section 10383.8 is contained in article 5.5 of chapter 2 of part 2 of division 2 of the Public Contract Code. It provides that DGS may make rules and regulations as necessary to carry out its duties with respect to federal surplus personal property. Those regulations are to be adopted in accordance with the Administrative Procedure Act. (Pub. Contract Code, § 10383.8.) San Joaquin Helicopters contends that if Government Code section 14615.1 applies to chapter 2 and exempts regulations thereunder from the Administrative Procedure Act, it directly conflicts with and thus must repeal by implication the provisions of Public Contract Code section 10383.8.

San Joaquin Helicopters ignores that under its analysis there must be a repeal by implication, either by the 1998 version of Government Code section 14615.1 or the 2000 version, which unquestionably applies to chapter 2. Since a disfavored repeal by implication cannot be avoided, there is no reason to adopt its interpretation of the proper scope of the 1998 version. In any event, it is unnecessary to find a repeal by implication under either version of Government Code section 14615.1. Public Contract Code section 10383.8 and Government Code section 14615.1 can be harmonized under the rules applying to specific and general statutes. Public Contract Code section 10383.8 is a more specific statute and thus its provisions as to regulations for federal surplus personal property are an exception to the more general provisions of Government Code section 14615.1 . (*Medical Board v. Superior Court* (2001) 88 Cal.App.4th 1001, 1018 [106 Cal.Rptr.2d 381].)

The plain meaning and the reasonable interpretation of the 1998 version of Government Code section 14615.1 is that the Legislature meant the entire part 2 of division 2 of the Public Contract Code by its reference to "the State Contract Act," and intended the section to apply to the duties of DGS under all of part 2 of division 2 of the Public Contract Code. Since Government Code section 14615.1 was validly enacted as part of Senate Bill 1645, the State could rely on it to exempt section 6.05 of the State Contracting Manual from the requirements of the Administrative Procedure Act.

San Joaquin Helicopters asserts the amendment to Government Code section 14615.1 violated the single-subject rule and complains that the State and DynCorp offer no authority for the proposition that a technical amendment need not comply with the single-subject rule. First, since we have

concluded that the 1998 version of Government Code section 14615.1 applied to chapter 2, the State need not rely on the 2000 amendment. ■ Second, the primary purpose of the single-subject rule is to prevent logrolling, the passage of laws that might otherwise not have passed if considered singly. (*Homan v. Gomez, supra,* 37 Cal.App.4th 597, 600.) An amendment that makes no substantive change in the law is not susceptible to logrolling since there is no reason to oppose a technical correction. In short, such an amendment has no "subject" to analyze under the single-subject rule. (Cf. *Association for Retarded Citizens v. Department of Developmental Services* (1985) 38 Cal.3d 384, 394 [211 Cal.Rptr. 758, 696 P.2d 150] [budget bill may not *substantively* amend and change existing law].)

IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Blease, J., concurred.

---

*See footnote, *ante,* page 1549.