Filed 6/24/14  Billuni v. Myers CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RICHARD BILLUNI et al., | |
| Plaintiffs and Appellants, | G048130 |
| v. | (Super. Ct. No. 30-2011-00465035) |
| GARY MYERS et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Richard Luesebrink, Judge.  Affirmed in part and reversed in part.

Bishton Gubernick, Norris J. Bishton, Jr., and Jeffrey S. Gubernick for Plaintiffs and Appellants.

Vogt Resnick & Sherak, Jack Smart and Barnet Resnick for Defendants and Respondents.

*        *        *

Following an arbitration, majority shareholder Gary Myers paid minority shareholder Richard Billuni $4.8 million for all of Billuni's shares in a closely held corporation.[1] Nonetheless, Billuni persisted with a separate legal action, in which he sought damages for alleged breaches of fiduciary duty by Myers and another minority shareholder, Dennis Barker. Billuni and Toyescorp Co., Ltd. (Toyescorp) also sued Myers on the theory that Myers had diverted business from Toyescorp, an entity equally owned by Billuni and Myers. The trial court entered a defense judgment on all counts.[2] We affirm with regard to the causes of action implicated by the arbitration and reverse with regard to the Toyescorp causes of action.

FACTS

Although the court entered judgment after a bench trial, the resolution of the pertinent issues was not based on factual determinations going to the merits of plaintiffs' allegations. Thus, our statement of facts is primarily concerned with undisputed background material (the parties helpfully stipulated to many of these facts before trial), the allegations made by plaintiffs in their operative pleading, and the procedural history of both this case and the arbitration between the parties. We will describe additional evidentiary material in the discussion section as necessary to resolve specific issues.

---

[1] Actually, the parties' shares were owned by family trusts for which the parties served as trustees, but for the sake of simplicity we ignore this inconsequential aspect of the case.

[2] There were other defendants and causes of action, but plaintiffs appeal only aspects of the judgment pertaining to Myers and Barker.

2

*The Dealership*

Garrick Motors, Inc., is a franchised Toyota and Scion dealership doing business as Toyota of Escondido (the Dealership). Billuni ascended to general manager of the Dealership in 1991 and filled this position until his resignation on October 8, 2010; Billuni also served as a director, secretary, and chief financial officer of the Dealership. At all relevant times, Myers was president and Barker was vice-president of the Dealership; both men also served as directors of the Dealership. Prior to April 26, 2012, the shares in the Dealership were owned as follows: (1) Myers — 68.67 percent; (2) Billuni — 29.93 percent; (3) Barker — 1.17 percent; and (4) Scott and Patty Whitehead — .23 percent. Myers now owns 98.6 percent of the shares since buying out Billuni.

Beginning in 2008, the Dealership suffered a double stroke of bad fortune. First, the economic downturn negatively affected industry-wide automobile and truck sales. Second, Toyota experienced highly publicized quality and safety issues. Both revenues and profits plummeted. The Dealership responded by cutting personnel and reducing salaries. Billuni saw his personal income on an annual basis drop from over $1.1 million to $400,000. The Dealership's banker demanded that an independent accounting firm review the Dealership's financial information.

Perhaps triggered by these trying times, the working relationship of the Dealership's principals fell apart. Billuni accused Myers of borrowing Dealership funds at unfairly low interest rates, as well as using Dealership funds to bankroll personal pursuits (e.g., a racing team, a yacht). Billuni claimed these practices caused financial difficulties at the Dealership. Myers denied wrongdoing and claimed it was Billuni who was at fault for the Dealership's difficulties.

*Toyescorp*

Toyescorp is a Seychelles corporation formed in 1998. Both Billuni and Myers own 50 percent of the shares of Toyescorp. Myers is president and a director of Toyescorp. Billuni is the chief financial officer and a director of Toyescorp.

Toyescorp reinsures policies written by Portfolio General Management Group (Portfolio), a company that provides extended warranty insurance and GAP (Guaranteed Auto Protection) insurance to customers purchasing automobiles at the Dealership. These policies were sold at the Dealership since the formation of Toyescorp in 1998 and until October 2010. The Dealership also sold similar insurance offered by Toyota Financial Services. However, until October 2010, the majority of these insurance policies sold by the Dealership were obtained from Portfolio and reinsured by Toyescorp.

*Arbitration Pursuant to the Buy/Sell Agreement*

Billuni, Myers, and Barker all signed a buy/sell agreement in 1999. The buy/sell agreement states, "Within a period commencing with the termination of Billuni's employment with the [Dealership], and ending ninety (90) days following such date of termination of employment, the remaining Shareholders shall have the option to purchase, and Billuni . . . shall, if such option is exercised, sell to the remaining Shareholders all Billuni['s] Shares of the [Dealership's] stock, at the price and on the terms and conditions set forth" in the agreement. Another section of the buy/sell agreement provides, "Any actions, controversies, claims, disputes and/or other factual or legal matters in question arising out of or relating to this Agreement, or the alleged breach thereof, shall be settled by arbitration conducted in accordance with the California Arbitration Act [citation] as then in effect except as provided herein."

4

Billuni resigned from his employment with the Dealership in October 2010. In November 2010, Myers exercised his option to acquire Billuni's shareholder interest. Because the parties could not agree on the proper application of the buy/sell agreement, Billuni filed a demand for arbitration between himself and Myers in March 2011. A JAMS arbitration ensued before a panel of three arbitrators. Among the issues raised by Billuni in this JAMS arbitration was: "How to determine the purchase price." The arbitration panel ordered that the purchase price be determined pursuant to a process utilizing three independent appraisers. The panel oversaw that the process was fully and properly carried out. On April 26, 2012, the 12,789 shares of the Dealership held by Billuni were purchased by Myers for the price of $4.8 million, the amount agreed to by the three appraisers.

Importantly, in supervising the appraisal process, the arbitrators ruled that the appraisers could take into account the derivative claims being pressed by Billuni on behalf of the Dealership against Myers: "The shareholder agreement specifically directs consideration of the minority status of the shares in the valuation, and the appraisers shall comply with this direction. Further, [Billuni] assert[s] that the appraisers should consider the derivative claims [he has] filed in Orange County Superior Court as part of their valuation. The appraisers shall give this matter such consideration, if any, as is appropriate in the exercise of their professional judgment."[3]

---

[3] This ruling was arguably inconsistent with an earlier ruling of the arbitrators, in which they denied Billuni's request to abate the arbitration until the completion of the civil action that is the basis of this appeal. The arbitrators explained: "The first threshold issue is whether the arbitration should be abated pending conclusion of the derivative suit. Billuni argues that the claims in the derivative suit may affect valuation of the stock, and that accordingly the arbitration should be stayed pending outcome of the suit. [¶] The Panel respectfully disagrees. The agreement requires exercise of the option within 90 days after retirement, and provides that time is of the essence. The derivative suit was only recently filed, and it may be years before it is resolved. It is uncertain whether the results of that suit will have any impact on the proper valuation of the shares. [¶] The request to abate is denied. If [Billuni is] entitled

5

In the March 2012 appraisal report unanimously agreed to by the three appraisers, the valuation analysis added (at least some of) Myers's contested spending back into the "pre-tax income" used to value the Dealership. Categories of contested spending included racing team expenditures, the boat captain's salary, Myers's salary, the Myers children's salaries, and travel and entertainment expenses exceeding a "normalized" amount.

*Pleadings*

Billuni and Toyescorp filed their initial complaint in April 2011 and amended with the operative complaint in December 2011. Plaintiffs restrict this appeal to four of the eleven causes of action, and we limit our description of the operative complaint accordingly. We note, however, that the first three causes of action in the operative complaint were styled as shareholder's derivative actions on behalf of the Dealership. These causes of action were dismissed by Billuni prior to trial, which commenced in September 2012.

In the fifth cause of action, Billuni alleges Myers and Barker breached their fiduciary duties to Billuni. Myers took interest free loans and loaned the Dealership money at usurious rates. Myers charged personal expenses to the Dealership, including his car racing hobby, his personal yacht, the salary of the yacht's captain, personal legal fees, and his children's personal automobile expenses. Myers personally performed accounting and tax services for the Dealership without a license and billed the Dealership for those services. This and other misconduct led to working capital problems at the Dealership and to the Dealership's default on bank loans. Billuni made numerous efforts

---

to some relief as a result of the derivative suit, [he] remain[s] free to seek [relief] from the court, or to commence a new arbitration."

to address these problems (including the delivery of a letter directly to Barker), but no one else (including Barker and Myers) was willing to act.[4]

In the eleventh cause of action, Billuni petitioned for a writ of mandate, civil penalty, and attorney fees pursuant to the Corporations Code, based on Myers' and Barker's alleged failure to provide Billuni with his right to access and copy corporate records as a shareholder of the Dealership. In March 2011, Billuni demanded an inspection of the records and the Dealership rejected this demand. The rejection letter, appended to the operative complaint, was signed by Myers on behalf of the Dealership. The rejection letter cites the alleged noncompliance of the inspection demand with the Corporations Code. This cause of action does not identify the Dealership as the party against which Billuni was seeking mandamus relief, and the Dealership is not a respondent to this appeal.

The ninth and tenth causes of action consist of breach of fiduciary duty claims by Billuni and Toyescorp against Myers. Myers "breached his fiduciary duties of good faith, fair dealing, loyalty and due care by causing [the Dealership] to cease all purchases of service contracts and GAP insurance from Toyescorp." "Myers's failure to cause [the Dealership] to purchase service contracts and GAP insurance from Toyescorp constitutes a wrongful diversion of Toyescorp corporate opportunities."

*Ruling and Judgment*

The court did not reach the merits of plaintiffs' claims. Responding to an oral motion during trial, the court referred the breach of fiduciary duty case regarding the Dealership "back to the arbitration panel to decide what additional damages, if any, should be recovered by" Billuni.

---

[4] The derivative causes of action were based on the same alleged misconduct that served as the basis for the fifth cause of action. The fifth cause of action merely incorporates the same factual allegations that supported the derivative causes of action.

The court issued a statement of decision in January 2013. The court concluded the arbitration clause was "sufficiently broad to encompass all claims set forth in [the] Fifth and Eleventh Causes of Action. The Court makes no judgment on whether the previous awards and/or rulings of the panel of three arbitrators in the parties' JAMS arbitration are res judicata. Rather, the Court merely finds that . . . Billuni expressly waived his right to litigate the claims set forth in his Fifth and Eleventh Causes of Action in this forum, as he expressly agreed to be bound by the binding arbitration provision in the Buy/Sell Agreement. [¶] Upon further reflection, it is the Court's decision that a remand . . . is inappropriate and if the parties choose to stipulate to a remand, they of [course] are free to do so, but the Court will not order it."

As to the ninth and tenth causes of action, the court ruled that Toyescorp did not possess a necessary certificate of qualification from the Secretary of State of California. (Corp. Code, §§ 2105, 2203.) Moreover, Billuni had not alleged any individual damages beyond those alleged on behalf of Toyescorp in the derivative action and the derivative claims could only be brought with a certificate of qualification. The court then entered judgment for defendants.

## DISCUSSION

Although the parties frame the issues differently, we find it most productive to separate this appeal into three discrete issues.

*Billuni's Breach of Fiduciary Duty Claim Against Myers and Barker*

The primary question presented is whether Billuni's breach of fiduciary duty claims against Myers and Barker arise out of or relate to the buy/sell agreement and

8

are therefore subject to arbitration.[5] We review this question de novo. (*Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1435-1437.) We summarily reject defendants' argument that this issue is not appealable. The court entered judgment against Billuni on all causes of action, including those the court deemed to be subsumed within the arbitration of the sale of Billuni's shares. (Code Civ. Proc., § 904.1, subd. (a)(1).)

The buy/sell agreement explicitly references the signatories' (as well as the Dealership's) rights and obligations with regard to the buying and selling of shares of stock in the Dealership upon various triggering events (e.g., the death of a shareholder, the bankruptcy of a shareholder, the termination of employment of Billuni at the Dealership). The buy/sell agreement also limits the signatories' rights to transfer shares of stock. In addition, the buy/sell agreement features non-compete and non-solicitation provisions with regard to shareholders opting to transfer their shares. The buy/sell agreement *does not* mention disputes regarding the corporate governance of the Dealership or breach of fiduciary duty claims against corporate insiders.

But in contrast to the apparent narrowness of the subject matter of the buy/sell agreement is the breadth of the arbitration clause. Certainly, derivative claims alleged on behalf of a corporation against its majority shareholder relate to the valuation of a minority shareholder's stock. The success of derivative claims may significantly affect the value of a company. (See *Cotton v. Expo Power Systems, Inc.* (2009) 170 Cal.App.4th 1371, 1374, 1380-1383 (*Cotton*) [in Corp. Code, § 2000 proceedings to buy out disgruntled minority shareholder, court erred by confirming appraisers' report fixing fair market value of shares without taking into account the effect of a derivative action on

---

[5] As noted above, section 37 of the buy/sell agreement provides, "Any actions, controversies, claims, disputes and/or other factual or legal matters in question arising out of or relating to this Agreement, or the alleged breach thereof, shall be settled by arbitration conducted in accordance with the California Arbitration Act [citation] as then in effect except as provided herein." The arbitration clause "'is very broad.'" (*Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 553, fn. 1.)

9

value of shares].) Moreover, Billuni's purported individual claims are based on the same conduct as the derivative claims (i.e., Myers's allegedly improper removal of Dealership assets). Thus, without considering the actual procedural history of this case, one might ask what all the fuss is about. Billuni's breach of fiduciary duty claims against Myers and Barker are "actions, controversies, claims, disputes and/or other factual or legal matters in question arising out of or relating to" the buy/sell agreement. The breach of fiduciary duty claims against Myers and Barker (whether derivative or otherwise) should have been arbitrated.

The fuss, of course, is that none of the individual parties (Myers, Billuni, or Barker) initially attempted to arbitrate any of Billuni's breach of fiduciary duty causes of action. Billuni filed a demand for arbitration and lawsuit (almost) simultaneously, then sought to abate the arbitration until his breach of fiduciary duty claims had been resolved in court. Neither Billuni nor Barker moved to compel arbitration upon the filing of the initial (or amended) complaint. Indeed, once Billuni took the position that the appraisers should consider the derivative claims, Myers actively fought to keep all consideration of the derivative claims out of the arbitration. One can certainly imagine a tenable scenario in which an arbitration and appraisal could have occurred without reference to any of the accusations of wrongdoing leveled by Billuni. The appraisers and arbitrators could have valued the Dealership on the assumption that nothing untoward occurred, reserving the breach of fiduciary duty claims for the courts; this may have been what the arbitrators initially intended when they denied Billuni's motion to abate the arbitration until the completion of the civil action. (But see *Cotton*, *supra*, 170 Cal.App.4th at p. 1382 [noting that a sale of shares would eliminate standing of former shareholder to bring derivative action, absent the creation of an equitable exception to this rule].) Alternatively, the civil action could have proceeded with the arbitration held in abeyance;

10

the appraisers then could have considered the results of the litigation in their valuation of Billuni's shares.[6]

The arbitrators, however, did not maintain strict separation of owe fiduciary duty claims from the valuation of Billuni's shares. After denying the motion to abate the arbitration, the arbitrators subsequently ruled (at the request of Billuni and over the objection of Myers) that the appraisers *could* consider the derivative claims being made by Billuni on behalf of the Dealership. The appraisal added Myers's contested spending back into the "pre-tax income" used to value the Dealership. Thus, for purposes of valuing the Dealership, the appraisal essentially assumed that Billuni was right (at least in part) on the merits of his breach of fiduciary duty claims. The $4.8 million received by Billuni for his shares in the Dealership was inflated over what it would have been had the appraisers assumed the propriety of all Myers' expenditures of Dealership funds. According to defendants and the trial court, it is now untenable for a court to try to decide whether Billuni is entitled to additional damages above and beyond the credit he received in the appraisal for Myers's controversial spending habits. The fiduciary duty claims, which fall within the scope of the arbitration agreement, were actually submitted to arbitration (at least with regard to the derivative claims).

Billuni characterizes his fifth cause of action as an individual claim against defendants, which can be distinguished from the derivative claims (on behalf of the Dealership) that were considered (at least in part) by the appraisers. (See, e.g., *Jones v. H.F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 107-112 [majority shareholders owe fiduciary

---

[6] We cannot (and have not been asked to) review the arbitrator's decision to allow valuation of the Dealership to proceed before the resolution of the breach of fiduciary duty claims. This is not an action to confirm, vacate, or correct the arbitral award. Even if it were, "an arbitrator's decision is not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 6.) There is no indication in the record that Billuni petitioned the court to stay the arbitration while the civil action proceeded.

11

duty to minority shareholders]; *Jara v. Suprema Meats, Inc.* (2004) 121 Cal.App.4th 1238, 1258-1260 (*Jara*) [passive minority shareholder may bring individual action against other owners who allegedly disguised dividends as excessive executive compensation].)  Billuni claims he is not double dipping, but rather seeking damages uniquely accruing to him as a result of his position as both the general manager of the Dealership and a minority shareholder in the Dealership.  Billuni's expert was prepared to testify that Billuni suffered lost compensation ($402,093) based on lower Dealership profitability (allegedly caused by the removal of a working capital cushion by Myers) and lost dividends (approximately $1.5 million) as a result of the money that was removed from the Dealership by Myers that could have been paid as dividends.[7]  In short, Billuni contends that because the appraisal did not address the categories of damage now asserted, the issues decided at arbitration are separate from those to be decided in this case.

---

[7] Another category of damages sought by Billuni is the devaluation of his stock by Myers' alleged corporate looting.  Billuni's expert intended to testify about additional amounts extracted from the company by Myers that were not identified until after the arbitration concluded.  Billuni's counsel noted that his expert (who was one of the three appraisers at the arbitration) "is going to testify . . . that these additional items resulted in lost stock value."  "[P]art of his report does indeed address the lost value of the stock."  "There is a pending claim for breach of fiduciary duty against Gary Myers.  And as part of the breach of fiduciary duty claim, one of the items of damages that we are claiming because of his breaches is that the value of Mr. Billuni's stock that he received pursuant to the buy/sell agreement was diminished."  This category of asserted damages undermines Billuni's assertion that the fifth cause of action is not a derivative claim.  (See *Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 312 ["Under California law, 'a shareholder *cannot* bring a direct action for damages against management on the theory their alleged wrongdoing decreased the value of his or her stock (e.g., by reducing corporate assets and net worth)'"].)

We agree with the trial court's determination that Billuni may not seek relief for his breach of fiduciary duty claims in court. Billuni successfully and properly submitted the derivative claims to the arbitrators and appraisers. The appraisers clawed back the money allegedly misappropriated by Myers for purposes of valuing Billuni's shares. Myers's improper use of Dealership funds was the allegation at the very heart of Billuni's breach of fiduciary duty causes of action, whether categorized as derivative or individual. That Billuni now seeks additional damages based on these same alleged breaches of fiduciary duty is irrelevant.[8] These additional damages needed to be addressed in arbitration.

Billuni cannot be allowed to eat his cake and have it too by partially submitting the derivative claims to arbitration and reserving the individual breach of fiduciary duty claims for the lawsuit. Without reviewing the merits of the appraisal, it is impossible for the trial court or this court to fairly assess the proper compensation to Billuni (assuming the merits of his claims that Myers improperly removed Dealership assets). Essentially, Billuni wants to argue with the conclusions of the appraisal by inserting new evidence bearing on the value of the Dealership. Billuni also wants the trial court to consider whether the Dealership would have been more profitable (thereby resulting in higher compensation for Billuni) had Myers never improperly removed Dealership assets. Arguably, Billuni also wants to double count Myers's allegedly improper spending by allowing the money to come back into the Dealership for purposes of the appraisal but then to go back out to Billuni as dividends that should have been

_____

[8] Although arguably not on point because of Billuni's insistence that the fifth cause of action is an individual rather than derivative claim, we note that a plaintiff is not entitled to split a cause of action into multiple lawsuits or, as relevant here, into one lawsuit and one arbitration. (See *Cuevas v. Truline Corp.* (2004) 118 Cal.App.4th 56, 61-62 [holding plaintiff did not improperly split cause of action into two lawsuits because arbitration concerned different parties than court case]; cf. *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1411-1412 [proper to refuse split of interconnected substantive claims between arbitration and superior court].)

13

awarded to Billuni.  The merits of Billuni's breach of fiduciary duty claims are now necessarily part of the arbitration.  (Cf. *Thibodeau v. Crum* (1992) 4 Cal.App.4th 749, 755 ["arbitrating parties are obliged . . . to place before their arbitrator all matters within the scope of the arbitration, related to the subject matter, and relevant to the issues"].)

Like the trial court, we decline to address whether the arbitration award precludes additional recovery by Billuni in arbitration; this is a question that can only be answered in arbitration.  Similarly, we decline to wade into the controversy over whether Billuni's fifth cause of action is properly characterized as an individual or derivative claim.

Finally, we reject Billuni's assertions that defendants waived or forfeited their right to arbitrate Billuni's breach of fiduciary duty claims.  It is true defendants did not move to compel arbitration until trial had commenced and, even then, defendants did so orally rather than by a written demand for arbitration as contemplated by the buy/sell agreement.  But it must be recalled that it was not obvious at the outset of the case that the arbitration would include consideration of the fiduciary duty claims.  And it must further be recalled that Billuni successfully advocated for the inclusion of the derivative claims within the scope of the arbitration for purposes of valuing his shares.  Myers opposed expansion of the arbitration to include consideration of the derivative claims by the appraisers.  He lost this fight when the arbitration award issued in March 2012.  Trial commenced and quickly concluded in September 2012, six months later.  Although not a motion to compel arbitration, the issue of the scope of arbitration was raised in a pretrial motion in limine to exclude evidence of damages to Billuni as a shareholder, a motion that was ultimately granted.  As the issues became clearer to the court as the trial progressed, defendants explicitly asked the court to "order the parties to resolve these disputes to the degree that they feel they must by way of the arbitration process."  This was not unreasonable delay as a matter of law under the unusual circumstances of this case.  (See *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187,

14

1195 [strong policy in favor of arbitration; "waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof"]; *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 991 ["Whether a party to an arbitration agreement has waived the right to arbitrate is a question of fact, and a trial court's determination on that matter will not be disturbed on appeal if supported by substantial evidence"].)

*Billuni's Petition for Writ of Mandate to Inspect Corporate Records*

We agree with Billuni that the eleventh cause of action does not arise out of or relate to the buy/sell agreement. Well after the parties had begun their dispute (and just before the filing of the initial complaint), Billuni sought to exercise his right as a shareholder to inspect corporate records. This cause of action should not be arbitrated. Defendants do not mount a serious defense of the court's ruling on this point.

But there are three obvious problems with Billuni's request for mandamus relief. First, he is no longer a shareholder of the Dealership and his request for mandamus relief is therefore moot. (Cf. *Chantiles v. Lake Forest II Master Homeowners Assn.* (1995) 37 Cal.App.4th 914, 920-922 [former director's petition for writ of mandate to inspect records was moot because she was no longer a director, but court exercised discretion to review issue anyway].) Second, Billuni did not seek this relief against the Dealership, the party that denied his request and the proper target of a petition for writ of mandate to inspect corporate records. (Corp. Code, §§ 1600, 1601; see Corp. Code, § 1604 ["In any action or proceeding under Section 1600 or 1601, if the court finds the failure of the corporation to comply with a proper demand thereunder was without justification, the court may award an amount sufficient to reimburse the shareholder . . . for the reasonable expenses incurred by such holder, including attorneys' fees, in connection with such action or proceedings"].) Third, Billuni's request "demanded a performance to which a shareholder is not entitled by statute, i.e., to have

15

the current or monthly financial statements assembled and delivered to the shareholder. This right of actual delivery is guaranteed only by section 1501 with respect to the annual report."[9] (*Jara*, *supra*, 121 Cal.App.4th at p. 1264.) Corporations Code section 1601 affords "no more than a right to inspect and copy records at the company office." (*Id*. at p. 1263.) The corporation has no "affirmative duty to respond to a defective written demand." (*Id*. at p. 1264.)

Not much attention was paid to this cause of action below. The court swept this cause of action in with the breach of fiduciary duty cause of action in its analysis. But we reject Billuni's contention that the shortcomings in the eleventh cause of action should be ignored because they were not the focus of the court's analysis below. Billuni has no hope of succeeding with his request for mandamus relief in the courts.

*Breach of Fiduciary Duty Claims Against Myers Regarding Toyescorp*

As previously explained, Toyescorp is a corporation owned equally by Billuni and Myers, which sold reinsurance protection to Portfolio, the favored warranty and GAP insurer at the Dealership. The operative complaint alleged that Myers diverted Toyescorp's business after the fallout between Billuni and Myers, thereby breaching his fiduciary duties to Toyescorp and Billuni.

The court dismissed the breach of fiduciary duty claims (whether brought directly by Toyescorp or brought as a derivative action on behalf of Toyescorp by Billuni) based on Toyescorp's failure to obtain a certificate of qualification from the California Secretary of State. "A foreign corporation shall not transact intrastate business without having first obtained from the Secretary of State a certificate of qualification."

---

[9] Billuni's letter demanded "copies of all the monthly statements . . . for the years 2010 and 2011. To avoid having to prepare a new request each and every month, [Billuni proposed] that [the Dealership] agree to provide [Billuni] with each monthly statement until such time as [he is] no longer a shareholder."

(Corp. Code, § 2105, subd. (a).) "'[T]ransact intrastate business' means entering into repeated and successive transactions of its business in this state, other than interstate or foreign commerce." (Corp. Code, § 191, subd. (a).) A corporation that fails to obtain a certificate of qualification "shall not maintain any action or proceeding upon any intrastate business so transacted in any court of this state . . . ." (Corp. Code, § 2203, subd. (c).)

"The failure of a foreign corporation to qualify to transact business prior to commencing an action is a matter of abatement of the action. [Citation.] Once a nonqualified foreign corporation commences an action regarding intrastate business, the defendant may assert by demurrer or as an affirmative defense in the answer the lack of capacity to *maintain* an action arising out of intrastate business. [Citation.] . . . The defendant bears the burden of proving: (1) the action arises out of the transaction of intrastate business by a foreign corporation; and (2) the action was commenced by the foreign corporation prior to qualifying to transact intrastate business. [Citation.] If the defendant establishes the bar of the statute, then the foreign corporation plaintiff must comply with section 2203, subdivision (c). Ordinarily, the matter should be stayed to permit the foreign corporation to comply. If the foreign corporation plaintiff complies . . . by qualifying and paying fees, penalties and taxes, it may maintain the action. If the foreign corporation fails to comply, the matter should be dismissed without prejudice." (*United Medical Management Ltd. v. Gatto* (1996) 49 Cal.App.4th 1732, 1740.)

Toyescorp concedes it is a foreign corporation. Billuni did not know if Toyescorp was registered with the California Secretary of State to do business in California, but agreed with the following question: "Isn't it true . . . that [Toyescorp] specifically [does not] want to be listed with the Secretary of State because [it does not] want to come under the auspices of the California Insurance Commissioner?" We

17

conclude there is substantial evidence for the conclusion that Toyescorp does not have a certificate of qualification.

The crux of the dispute is whether this is an action or proceeding "upon any intrastate business" (Corp. Code, § 2203, subd. (c)). In concluding this action was upon intrastate business, the court reasoned that all the insurance transactions with customers occurred at the Dealership in California, Portfolio had a California agent responsible for this line of business, and Billuni and Myers (who ultimately benefited from the sale of Portfolio insurance at the Dealership through their ownership interests in Toyescorp) were also California residents. While acknowledging these facts, Toyescorp counters that this is a corporate law dispute between corporate insiders, not one relating to the business of reinsuring Portfolio's policies. (See *United Systems of Arkansas, Inc. v. Stamison* (1998) 63 Cal.App.4th 1001, 1007 [holding transactions at issue did not amount to intrastate business and plaintiff therefore did not require certificate of qualification to maintain action].) The parties' briefing and our research do not disclose a clear answer as to which approach to this question is correct.

We conclude the court erred in dismissing Toyescorp's claims on an alternative ground. The certificate of qualification affirmative defense is a plea in abatement, subject to waiver for failure to raise it at the earliest opportunity. (See 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, §§ 1129-1131, 1134, pp. 556-560; see *Washington Mutual Bank v. Blechman* (2007) 157 Cal.App.4th 662, 669-670 [lack of capacity of corporation to sue "is a plea in abatement that '"must be raised by defendant at the earliest opportunity or it is waived"'"].) Myers did not raise this defense in a demurrer or in his answers to the two complaints filed by plaintiffs. Instead, Myers first raised this defense in a motion in limine, which was opposed in part by Toyescorp on the ground that the issue had not been raised in a timely fashion. Toyescorp raised this ground for reversal in its opening brief. Myers provides no authority for the claim that this ground for dismissal (or abatement) may be raised at trial.

18

DISPOSITION

The judgment is reversed with regard to the dismissal of the ninth and tenth causes of action brought by plaintiffs against Myers. The judgment is otherwise affirmed. The parties shall bear their own costs on appeal.


IKOLA, J.

WE CONCUR:


O'LEARY, P. J.


THOMPSON, J.